**AKERMAN LLP**
CAROLINE H. MANKEY (Bar No. 187302)
*caroline.mankey@akerman.com*
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 533-5949
Facsimile: (213) 627-6342

**M. NEIL CUMMINGS & ASSOCIATES, PLC**
M. NEIL CUMMINGS  (Bar No. 076166)
*mneil@mncalaw.org*
11150 W. Olympic Blvd., Suite 1050
Los Angeles, CA 90064-1817
Telephone: (310) 914-1853
Facsimile: (310) 914-1849

Attorneys for Plaintiffs
Carroll Shelby Licensing, Inc.,
and the Carroll Hall Shelby Trust

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC., a California corporation, and the CARROLL HALL SHELBY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>DENICE SHAKARIAN HALICKI, an individual, ELEANOR LICENSING, LLC, a Delaware limited liability company, GONE IN 60 SECONDS MOTORSPORTS, LLC, a Delaware limited liability company, and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF WRITTEN CONTRACT; (2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3) FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT; (4) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (5) TRADE LIBEL; (6) COMMON LAW UNFAIR COMPETITION; (7) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.; AND (8) DECLARATORY JUDGMENT;**<br><br>**DEMAND FOR JURY TRIAL** |

1

1    Plaintiffs CARROLL SHELBY LICENSING, INC. and the CARROLL HALL

2    SHELBY TRUST, hereby assert this Complaint against defendants DENICE

3    SHAKARIAN HALICKI, ELEANOR LICENSING, LLC, GONE IN 60 SECONDS

4    MOTORSPORTS, LLC, and DOES 1-10 (collectively, "Defendants"), and allege as

5    follows:

6                              **THE PARTIES**

7         3.    Plaintiff Carroll Shelby Licensing, Inc. ("CSL") is a corporation,

8    organized and existing under the laws of the State of Texas, with its principal place of

9    business in the County of Los Angeles, State of California.  CSL is the licensing

10   agent of the Carroll Hall Shelby Trust.  In that capacity, CSL manages and has

11   exclusive authority to license and exploit its intellectual property, including the

12   trademarks owned by it.

13        4.    Plaintiff Carroll Hall Shelby Trust (the "Trust") is a trust, organized and

14   existing under the laws of the state Texas, the trustees of which are M. Neil

15   Cummings and Joe Conway.  CSL and the Trust are sometimes referred to herein as

16   the "Shelby Parties."

17        5.    Defendant Denise Shakarian Halicki ("Ms. Halicki") is an individual

18   residing in the County of Orange, State of California.  Defendants are informed and

19   believe that she is the sole or primary owner, principal, member and/or managing

20   member of Defendants Eleanor Licensing, LLC, and Gone in 60 Seconds

21   Motorsports, LLC.

22        6.    Defendant Eleanor Licensing, LLC, is a limited liability company,

23   organized and existing under the laws of the State of Delaware, with its principal

24   place of business at 6789 Quail Hill Parkway, Suite 412, Irvine, California 92603.

25        7.    Defendant Gone in 60 Seconds Motorsports, LLC ("Gone in 60

26   Seconds") is a limited liability company, organized and existing under the laws of the

27   State of Delaware, with its principal place of business in Los Angeles County, at

28   23622 Calabasas Road, Suite 107, Calabasas, California 91302.

2

8.      The Shelby Parties are informed and believe that Defendants Does 1 through 10, inclusive, are at fault in whole or in part for the claims alleged herein. The true names, whether corporate, individual, or otherwise of Does 1 through 10, inclusive, are presently unknown to the Shelby Parties and, therefore, these Does are being sued by fictitious names, and the Shelby Parties will seek leave to amend this Complaint to include the true names and capacities when the same have been ascertained.

9.      The Shelby Parties are informed and believe that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, member, principal, alter-ego, and/or employee of the other Defendant and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of the Shelby Parties' rights and the damages to the Shelby Parties proximately caused thereby.

**JURISDICTION AND VENUE**

10.      This action is brought under the Federal Trademark Act (the "Lanham Act") of July 5, 1946, as amended, 15 U.S.C. Section 1051 et seq.  This Court has jurisdiction under 15 U.S.C. Section 1121 and 28 U.S.C. Section 1331 and 1338. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367, over the subject matter of the state law claims because those claims are so related to the Shelby Parties' federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

11.      Venue is proper in the Central District of California pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here and pursuant to 28 U.S.C. Sections 1391(b)(1) and 1391(b)(2) because it is where defendant Gone in 60 Seconds Motorsports, LLC resides.

53896536;1

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

The Legendary Shelby Automobiles

12.     Carroll Shelby was the legendary race car driver who, among other accomplishments, broke the land speed record at the Bonneville Salt Flats and won the 24-hour Le Mans road race during his racing career.  After he retired from professional racing, Shelby broadened his already extensive public reputation by designing some of the most highly prized race and production cars ever built.

13.     Starting with the Cobra in approximately 1962, Carroll Shelby and his business entities began building the Shelby brand, designing and developing some of the most innovative and celebrated performance cars in automotive history.  In 1965, Carroll Shelby created the Shelby Mustang GT350 to help Ford elevate the image of the Mustang to a performance car.  A fictionalized version of the events leading up to this collaboration was featured in the 2019 blockbuster and Academy Award-nominated movie "Ford v. Ferrari."

14.     In 1967, Mr. Shelby and Ford released the GT500 with a larger engine and more horsepower than the GT350.  Since then, Mr. Shelby and his business entities, licensees and partners have produced and distributed numerous variations of the GT350 and GT500, including limited and collector editions, and different models, such as the Super Snake, Dragon Snake, the GT500KR (or "King of the Road"), and the GT500CR, spanning decades and continuing to the present day.  Attached hereto as **Exhibit A** are various images of SHELBY GT500 vehicles of different variations and from different years.  Among the unique and defining design elements of the body of the SHELBY GT500 that have remained consistent are the racing stripes and the elevated vent in the hood of the car.  Some GT500 models have two sets of headlights, with the size, shape and placement varying over time.

15.     The continuing consumer appeal of the SHELBY brand is reflected by the fact that, beginning in 2007, Ford Motor Co. has sold new production automobiles with the SHELBY trademark under license from the Shelby Parties.  ABC News

4

1    posted an article at https://abcnews.go.com/Business/carroll-shelbys-legacy-lives-
2    ford-mustang/story?id=67019848 on November 16, 2019, explaining that: "Mustangs
3    that bear the widely recognized Shelby Cobra insignia celebrate the storied history of
4    Carroll Shelby, the visionary Texas car designer and race car driver who is portrayed
5    on the big screen by Matt Damon in the new movie, 'Ford v Ferrari.'"  A copy of this
6    article is attached hereto as **Exhibit B.**

7          16.    As a result of the high quality, excellent performance, and high profile of
8    the SHELBY vehicles, the SHELBY name and trademark remain well-known to this
9    day, not only to sports car enthusiasts, but to the public in general.  Industry
10   publications routinely recognize its celebrated and illustrious status and give it the
11   new models high ratings and reviews, such as the recent coverage in Car and Driver
12   at https://www.caranddriver.com/ford/mustang-shelby-gt500, where the 2020
13   SHELBY GT500 is described as sitting "at the pinnacle of American muscle cars."  A
14   review at https://pamplinmedia.com/wh/444245-359245-2020-shelby-gt500-is-the-
15   most-powerful-mustang-ever-made describes the GT500 as a "legendary muscle car"
16   and called the 2020 SHELBY GT500 "the most powerful Mustang ever made."
17   Copies of both of these articles are attached hereto as **Exhibit C**.

18         17.    As a sign of the historic distinction of SHELBY automobiles for over
19   fifty years, a 1965 prototype of the SHELBY Cobra Daytona Coupe became the first
20   car ever to be accepted into the National Historic Registry of the United States and
21   was recognized at the International Historic Motoring Awards as "Car of the Year"
22   for 2014.

23         18.    In 2019, a 1967 Shelby GT500 Super Snake sold at auction for $2.2
24   million, which until recently was the most expensive Mustang in the world, as
25   reported in various automotive industry publications, including at
26   https://www.motorauthority.com/news/1082886_1967-shelby-gt500-super-snake-
27   sells-for-2-2m-making-it-worlds-most-expensive-mustang, a copy of which is
28   attached hereto as **Exhibit D**.

19.     By virtue of the Shelby Parties' extensive use and promotion of the SHELBY Marks and the GT500 vehicles since the 1960s, the purchasing public has come to associate the SHELBY Marks, as well as the design and overall image of the GT500, with the Shelby Parties and their predecessors in interest.

20.     The Trust is the owner of numerous trademarks registered by the U.S. Patent & Trademark Office consisting of or featuring the name SHELBY and/or vehicles designed by Mr. Shelby, including:

a.     SHELBY, U.S. Reg. No. 1,538,090;

b.     SHELBY, U.S. Reg. No. 4,193,153;

c.     SHELBY,  U.S. Reg. No. 4,118,294;

d.     SHELBY, U.S. Reg. No. 3,913,730;

e.     SHELBY and Oval Logo, U.S. Reg. No. 2,357,468;

f.     SHELBY Logo, U.S. Reg. No. 4,384,077;

g.     SHELBY and Weave Logo, U.S. Reg. No. 1,603,489;

h.     SHELBY GT-H, U.S. Reg. No. 3,518,393;

i.     SHELBY SERIES 1, U.S. Reg. No. 2,265,334;

j.     SHELBY SERIES 1, U.S. Reg. No. 2,736,820;

k.     SHELBY SERIES 2, U.S. Reg. No. 2,261,744;

l.     SHELBY 427 S/C, U.S. Reg. No. 1,768,020;

m.     SHELBY PERFORMANCE PARTS, U.S. Reg. No. 4,261,592;

n.     SHELBYFEST, U.S. Reg. No. 4,125,651;

o.     SHELBY AMERICAN, U.S. Reg. No. 4,146,877;

p.     SHELBY AMERICAN, U.S. Reg. No. 4,146,866;

q.     THE SHELBY AMERICAN, U.S. Reg. No. 2,850,911;

r.     CARROLL SHELBY Signature, U.S. Reg. No. 4,144,534;

s.     CS SHELBY Logo, U.S. Reg. No. 4,483,679;

t.     GT500, U.S. Reg. No. 4,820,486;

u.     GT-500, U.S. Reg. No. 3,130,470;

6

53896536;1

1    v.    G.T. 500, U.S. Reg. No. 6,091,038;

2    w.    GT350, U.S. Reg. Nos. 4,820,485 and 5,121,668;

3    x.    G.T.350, U.S. Reg. No. 3,261,743;

4    y.    CS, U.S. Reg. Nos. 1,423,787, 1,174,092 and 3,229,512;

5    z.    Design showing the GT350 trade dress, U.S. Reg. Nos. 5,121,668; and

6    aa.   Designs showing the GT 500 trade dress in the form of the vehicle's
7 signature roof line, stripe, placement of GT 500 between the rear edge of the front
8 wheel well and front edge of the door, air scoop on the rear portion of the vehicle
9 above the stripe, and double trapezoid rear side window cover, U.S. Reg. Nos.
10 5,121,669 and 5,121,670 (establishing first use in commerce as of 1967).  Copies of
11 the three certificates of registration for the GT500 and GT350 trade dress are attached
12 hereto as **Exhibit E**.

13    21.   The foregoing registrations cover goods in no less than 19 International
14 Classes, for products as diverse as automobiles, jewelry, artwork, audio equipment,
15 clothing, toys, books, luggage, photographs, coffee makers, beverage classes and
16 services such as organizing exhibitions and fairs.  The Shelby Parties have also used
17 SHELBY and many of the foregoing registered marks, and unregistered variants, for
18 goods and services uncovered by the registrations.  Among the unregistered rights are
19 the valuable trade dress rights associated with the outward appearance of the
20 SHELBY GT350 and the SHELBY GT500 vehicles designed by Mr. Shelby in the
21 1960s.  The registered and unregistered variants of the trademarks and trade dress are
22 hereinafter collectively referred to as the "SHELBY Marks."

23    22.   CSL is the licensing agent of the Trust.  In that capacity, CSL manages
24 and has exclusive authority to license and exploit all of the SHELBY Marks.

25    23.   Although Carroll Shelby passed away in 2012, the Shelby Parties and
26 their affiliates and licensees have continued the development, design, manufacture,
27 and sale of variants of the original SHELBY GT500 vehicles to the present time.

28 Gone In 60 Seconds

24.     In 1974, Henry B. (Toby) Halicki produced a movie entitled, "Gone in Sixty Seconds."  The storyline of the film involved the attempt by a team of car thieves to steal 48 cars within one week.  One of the automobiles used in this film was a yellow 1971 Ford Mustang Mach 1.  At various points in the movie, that car is described by the name "Eleanor."

25.     Toby Halicki died in 1989.  On March 24, 1995, Denice Halicki secured the rights to the original "Gone in Sixty Seconds" movie from his estate. Thereafter, Ms. Halicki entered into an agreement to sell certain of those rights to Hollywood Pictures Company, a division of Walt Disney Studios.  Pursuant to that agreement, in the year 2000, Disney released a remake of the original 1974 "Gone in 60 Seconds" film (the "2000 Remake") through Touchstone Pictures, another division of Disney Studios.

26.     The 2000 Remake presented the same storyline of a group of thieves who set out to steal a large number of cars in a short period of time.  Each car was given a woman's name as code, and one is called "Eleanor."  Given the tremendous continuing popularity of the SHELBY GT500, it was no surprise that the Eleanor vehicle in the 2000 Remake was modeled, not from a Mustang Mach 1 as in the original 1974 version, but from a SHELBY GT500. In fact, the car was identified as a SHELBY GT500 and/or SHELBY Mustang in the 2000 Remake at least 8 times – four times audibly in the characters' conversations and four times written on a blackboard.  A still image from the movie showing the written words "SHELBY GT 500 – ELEANOR" is attached hereto as **Exhibit F**.

27.     More specifically, the Eleanor vehicle in the 2000 Remake consisted of a 1960s variation of a SHELBY GT500 body with a mere two design elements that distinguish it from the SHELBY GT500, namely, an exaggerated, raised hump feature on the hood (the "Eleanor Hood") and two small headlights with custom molded 3-inch holes and 2-inch lights inset from each of the two main headlights (the "Eleanor Inset Lights").  An image of the Eleanor vehicle as shown on

8

Defendants' website showing these two distinctions is attached hereto as **Exhibit G**.

28.     Although it cannot be disputed that the Shelby Parties and their predecessors own, and have owned since approximately 1967, the trademarks and trade dress associated with the GT500, Denice Halicki claims ownership of copyrights in the Eleanor character, as well as ELEANOR trademarks, including U.S. Registration Nos. 4342910, 5064471, 4960450, 3348046, 2837333, and unregistered variants thereof (the "ELEANOR Marks").

29.     According to Defendants' website, www.gonein60seconds.com, "the company's [sic] 'Gone in 60 Seconds Motorsports' and 'Eleanor Licensing' have been and continue to develop and offers official licensed Gone in 60 Seconds Automobiles, including the star car character 'Eleanor' along with other automotive-related products associate merchandise worldwide."  The website further states that "[u]nder [sic] "Eleanor Licensing" banner, Denice [Halicki] made licensing deals to build and to sell 'Officially Licensed' replicas [sic] Gone in 60 Seconds star car character "Eleanor" as she appears in the Gone in 60 Seconds remake 2000."

30.     From approximately 2004 to 2009, the Shelby Parties and the Defendants engaged in litigation with one another, along with various other related and third parties, regarding the protectability, scope of protection, respective ownership, and alleged infringement of the SHELBY Marks and ELEANOR Marks and the claimed copyrights to the Eleanor character.

31.     On or about October 30, 2009, the Shelby Parties and some of their affiliates entered into a confidential settlement agreement with Defendants and one of their affiliates, to resolve the litigation (the "Settlement Agreement").  The Settlement Agreement is being submitted herewith in redacted form (pending the Court's ruling on an application for leave to file an unredacted copy under seal) as **Exhibit H**.  The Settlement Agreement provides in pertinent part that:

10

53896536;1

<u>Defendants' Harassment and Intimidation of the Shelby Parties' Business Affiliates</u>

32.     In or about December 2019, the Shelby Parties became aware that counsel for Ms. Halicki had sent a letter to one of the Shelby Parties' customers at his home in Colorado.  The customer had purchased a genuine, licensed SHELBY vehicle manufactured by Unique prior to the parties' execution of the Settlement Agreement, ███████████████████████████████████████ ████████ Contending that the vehicle was an Eleanor vehicle because it bore the designation GT-500E, and that the "E" refers to Eleanor, Defendants demanded that the customer remove all SHELBY Marks from the vehicle, replace them with Defendants' ELEANOR Marks, and pay a "licensing" fee to Defendants.  The customer paid a fee to Defendants, but decided not to remove the SHELBY Marks from his vehicle or to replace them with Eleanor markings.

33.     Defendants also contacted the Barrett-Jackson Auction Company, the most prominent auction for the sale of collector cars, and threatened to sue it if it allowed the customer's SHELBY vehicle to be sold at its upcoming auction without replacing the SHELBY Marks with ELEANOR Marks.  This resulted in the customer being prevented from selling in the auction a genuine SHELBY vehicle, despite the fact that ███████████████████████████ ███████████████████████████████

34.     On December 31, 2019, counsel for Denice Halicki, Eleanor Licensing, LLC, and "other of Ms. Halicki's entities" sent a cease and desist letter

11

53896536;1

to Jason Engel of Classic Recreations, LLC ("Classic Recreations"), one of the Shelby Parties' current licensees, accusing Classic Recreations of infringing on the Defendants' rights in the Eleanor vehicles and demanding that it cease the alleged infringement and provide an accounting and other remedies.

35.     Prior to becoming a Shelby licensee, Classic Recreations had been a licensee of Defendant Eleanor Licensing, LLC, and built Eleanor vehicles.  By the time it received the cease and desist letter in December 2019, Classic Recreations had been a SHELBY licensee, manufacturing and selling various SHELBY vehicles, including GT500CR models, for close to ten years – with extensive coverage in the automotive media – and without objection from the Defendants on the ground that they infringed on any Eleanor rights.  Attached hereto as **Exhibit I** are (a) images of some of the GT500CR vehicles that Classic Restorations has built during the years it has been under license from the Shelby Parties, (b) an article dating back to 2007 regarding Classic Restorations' SHELBY GT500 vehicles found here: https://www.automobilemag.com/news/classic-recreations-ford-mustang-gt500cr-review-first-drive/, and (c) a page from Classic Restorations' website showing the new carbon fiber option for the GT500CR.   These images confirm that Classic Restorations' GT500CR vehicles have the traditional SHELBY GT500 elevated hood vent, but do not have the exaggerated Eleanor Hoods or the Eleanor Inset Lights.

36.     On January 21, 2020, counsel for the Shelby Parties responded to counsel's letter to Classic Recreations, explaining in pertinent part that:

a.     Classic Recreations' vehicles do not have the Eleanor Hoods. Instead, the hoods of Classic Recreations GT500CR vehicles are made from a mold of an actual SHELBY GT500 built by Carroll Shelby in 1967, which long predated any Eleanor design.

b.     Classic Recreations' vehicles do not have the Eleanor Inset Lights.

12

c.      Two allegedly infringing Eleanor vehicles built by Classic Recreations had been built pursuant to the license granted to Classic Recreations by Defendant Eleanor Licensing, LLC, and Classic Recreations had paid royalties on those vehicles to Eleanor Licensing, LLC.

d.      The internet domain www.eleanormustang.net was a website launched and used by Classic Recreations only when it was a licensee of Eleanor Licensing, LLC, and is not a functioning website.  Classic Recreations offered to transfer ownership of the domain to Eleanor Licensing, LLC, or Ms. Halicki.

37.     Counsel for Defendants did not respond to the January 21, 2020 letter.

38.     On June 29, 2020, Michael Leone, a representative and agent of Defendants, sent a cease and desist letter on "Gone in 60 Seconds" letterhead to representatives of SpeedKore Performance Group ("SpeedKore"), one of the Shelby Parties' business partners and consultants that is helping the Shelby Parties and Classic Recreations to develop and manufacture carbon fiber bodies for their SHELBY GT-500 vehicles (which are shown in **Exhibit I** hereto).  The letter accused SpeedKore of "building illegal infringing 'counterfeit' Gone in 60 Seconds Star Car Character 'Eleanor' as she appears in the Gone in 60 Seconds 2000 Remake film in carbon fiber called GT500CR."  The letter further contended that SpeedKore's actions "constitute blatant counterfeiting and willful infringement of Ms. Halicki's valuable intellectual properties of the 'Gone in 60 Seconds' and 'Eleanor' Brand and Franchise" and demanded that SpeedKore immediately cease and desist from any exploitation of Gone in 60 Seconds or Eleanor, "including Eleanor being called GT500CR."  The letter even went so far as to threaten that the FBI, ICE and others would shut down businesses infringing on intellectual property rights.

39.     In support of his allegations, demands and threats, Mr. Leone cited an

13

article located online at https://www.motorious.com/articles/news/carbon-fiber-shelby/ (the "Article").  A copy of the Article is attached hereto as **Exhibit J**.  The Article contains an image of a SHELBY GT500CR that visibly bears neither of the two elements unique to Eleanor vehicles, namely, the Eleanor Hood or Eleanor Inset Lights, nor any other indication that SpeedKore's products infringe on the Eleanor rights in any way.  They do not.  SpeedKore's products are modeled solely on the GT500 trademarks and trade dress owned exclusively by the Shelby Parties and their predecessors since 1967.  The only reference to Eleanor in the Article is the observation by the third party author of the Article that: "The iconic 1967 Shelby GT500 Ford Mustang is a car that tops the dream list of enthusiasts every [sic], especially after the remake of *Gone in 60 Seconds* starring the elusive Eleanor."  In no way does this passing reference (by a third party) to the fact that the Eleanor vehicle in the 2000 Remake was a SHELBY GT500 (which is true) reflect any infringement by SpeedKore of the mere two design elements unique to Eleanor.  Defendants' accusations to the contrary are blatant bad faith, intimidation and harassment of the Shelby Parties' business partner.

40.     Defendants' ongoing pattern and practice of intimidation, accusations of infringement, and threats of lawsuits and liability to the Shelby Parties' business partners, licensees and customers ███████████████████████ ███████████████ and are an unlawful effort to disavow, deny, and disparage the SHELBY brand and trademarks, to reverse palm off Shelby vehicles as their own, and to wrongfully interfere with the Shelby Parties' business and contractual relationships.

41.     The Shelby Parties are informed and believe that Defendants have intimidated and threatened other business partners and/or customers of the Shelby Parties in a pervasive harassment campaign, the full scope of which is as yet unknown to the Shelby Parties.

53896536;1

## FIRST CLAIM FOR RELIEF

(Breach of Written Contract)

42.    The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

43.    The Settlement Agreement is a valid and enforceable written agreement.

44.    Defendants have materially breached their obligations under the Settlement Agreement in various respects, including by:



45.    The Shelby Parties have performed all obligations and conditions on their part to be performed under the Settlement Agreement, except those which it was excused from performing.

46.    As a direct and proximate result of Defendants' breaches of the Settlement Agreement, the Shelby Parties have been damaged in various respects, including, without limitation, a loss of sales, loss of valuable time and progress in developing and building new products for sale, a diminution in the value of the SHELBY Marks and the Shelby Parties' reputation, goodwill and relationships with its customers, licensees and business partners, in an amount to be proven at trial.

53896536;1

**SECOND CLAIM FOR RELIEF**

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

47.     The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

48.     In the Settlement Agreement, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

49.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

50.     The Settlement Agreement contains an implied covenant of good faith and fair dealing that precludes Defendants from doing anything to deprive the Shelby Parties of the benefits of the Settlement Agreement or to frustrate its purposes.  The covenant is aimed at making effective the Settlement Agreement's promises.

51.     Defendants' assertion of claims against customers of the Shelby Parties or their licensees as to allegedly infringing vehicles frustrates the purpose of the Settlement Agreement and deprives the Shelby Parties of its benefits, as the assertions of such claims severely damages the Shelby Parties' reputation, goodwill, and the value of the SHELBY Marks, and the customers may look to the Shelby Parties and/or their licensees for indemnification.  As such, Defendants' actions violate the

16

1   implied covenant of good faith and fair dealing contained in the Settlement

2   Agreement.

3       52.    As a direct and proximate result of Defendants' breaches of the implied

4   covenant of good faith and fair dealing contained in the Settlement Agreement, the

5   Shelby Parties have been damaged in various respects, including, without limitation, a

6   diminution in the value of the SHELBY Marks and the Shelby Parties' reputation,

7   goodwill and relationships with its customers, in an amount to be proven at trial.

8   <center>**THIRD CLAIM FOR RELIEF**</center>

9   <center>(False Designation of Origin under 15 U.S.C. § 1125(a))</center>

10       53.    The Shelby Parties incorporate the allegations of each foregoing

11   paragraph as though fully set forth herein.

12       54.    The SHELBY Marks, including the unregistered marks and trade dress,

13   are distinctive of goods and services originating with the Trust, the owner of the

14   SHELBY Marks, and CSL as the exclusive licensing agent.  Through the many years

15   of sales and advertising by the Shelby Parties and their predecessors, the SHELBY

16   Marks have become associated in the minds of consumers with the high quality

17   products and services produced and/or authorized by the Shelby Parties.

18       55.    Defendants' demands that an owner of a genuine SHELBY vehicle, as to

19   which all claims had been released by Defendants in the Settlement Agreement,

20   remove the SHELBY Marks from the vehicle, replace them with ELEANOR Marks

21   and/or other related markings, and pay a licensing fee is classic "reverse passing off,"

22   prohibited under Section 43a of the Lanham Act, which forbids the use of any false

23   designation of origin, false or misleading description of fact, or false or misleading

24   representation of fact, which is likely to cause confusion or deception.  15 U.S.C. §

25   1125(a).

26       56.    The demands and threats made by Defendants' upon the Shelby Parties'

27   customer and to the Barrett-Jackson Auction Company was likely to, and did, cause

28   confusion and deception in the marketplace as to whether the Shelby Parties own the

<center>17</center>

SHELBY Marks, whether they have the rights to license the SHELBY Marks, whether vehicles ███████████████████████████████ ███████████████ were properly licensed by the Shelby Parties and built by their licensees, whether such vehicles are genuine or infringing, whether they can be sold at auction without infringing on Defendants' rights, whether an owner of such a vehicle can be forced to pay a licensing fee to Defendants in order for the vehicle to be legal and non-infringing, and in other similar respects.

57.   Defendants' unauthorized demands for removal and replacement of the SHELBY Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to the Shelby Parties, for which they have no adequate legal remedy.  Accordingly, the Shelby Parties are entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all such deceptive, confusing and harmful conduct.

58.   As a direct and proximate result of Defendants' wrongful conduct, the Shelby Parties have been and will continue to be damaged by, without limitation, a diminution in the value of the SHELBY Marks and in their reputation and goodwill, harm to the reputation and goodwill of the Shelby Parties, and the loss of the advertising value of the SHELBY Marks that otherwise would stem from public awareness of any SHELBY Marks stripped from vehicles, in an amount to be proven at trial.

59.   Defendants' unauthorized demands for removal of the SHELBY Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  The Shelby Parties are therefore entitled to recover three times the amount of actual damages or profits, and attorney's fees and costs incurred in this action, and Defendants' profits from its infringement of the SHELBY Marks pursuant to 15 U.S.C. § 1117(a).

60.   Defendants' unauthorized reverse passing off has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to the Shelby

53896536;1

Parties in various ways, including but not limited to the impact on the reputation and goodwill of the Shelby Parties and the SHELBY Marks, the confusion caused in the minds of consumers between the SHELBY Marks and the Eleanor Marks as a result of Eleanor Marks being placed on Shelby vehicles, and the Shelby Parties' lack of control over the quality of the Eleanor goods and services with which the Shelby Parties are being associated, for which there is no adequate legal remedy. Accordingly, the Shelby Parties are entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing, confusing, and otherwise harmful conduct pursuant to 15 U.S.C. § 1116(a).

## FOURTH CLAIM FOR RELIEF

(Intentional Interference with Contractual Relations)

61.     The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

62.     The Shelby Parties have a valid license agreement with third party Classic Recreations.

63.     Defendants know of the contractual relationship between the Shelby Parties and Classic Recreations, as evidenced by the fact that their counsel's December 31, 2019, letter to Classic Recreations referenced a declaration given by Mr. Engel of Classic Recreations in an unrelated case captioned *Carroll Shelby Licensing, Inc. v. U.S. Restorations, LLC*, United States District Court for the Central District of California case number 2:17-cv-00737 (ODW) (SSx).  That declaration by Mr. Engel expressly identified Classic Recreations as a licensee of the Shelby Parties. Moreover, Classic Recreations is a former licensee of Defendants, so it is no stranger to them.  Defendants themselves have litigated with Classic Recreations and are well aware of its current status as a licensee of the Shelby Parties.  Moreover, there has been extensive media coverage of Classic Recreations' SHELBY vehicles, including the example contained in **Exhibit I** hereto.

19

64.     Defendants have acted intentionally in making accusations, demands and threats to third parties, such as Classic Recreations, with whom they know the Shelby Parties have a contractual relationship.  These acts by Defendants are designed to induce a breach or disruption of the contractual relationship, such as by demanding that Classic Recreations cease its manufacturing and sale of licensed SHELBY vehicles.

65.     Defendants' conduct has caused a disruption of the Shelby Parties' contractual relationship with Classic Recreations.  It has eroded Classic Recreations' trust in the Shelby Parties and the contractual relationship and has diminished Classic Recreations' enthusiasm for expanding development and production of the product line, impacting sales and growth.

66.     As a direct and proximate result of Defendants' wrongful conduct, the Shelby Parties have been and will continue to be damaged by, without limitation, a diminution in the value of the SHELBY Marks and in their reputation and goodwill, harm to the reputation and goodwill of the Shelby Parties, and the loss of sales, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

(Trade Libel)

67.     The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

68.     Defendants have publicly made false statements of fact that vehicles properly licensed by the Shelby Parties infringe upon Defendants' rights associated with the Eleanor vehicle.

69.     Defendants knew that the statements were not true when they made the statements or acted in reckless disregard of the falsity of the statements.

70.     No privilege protects the false statements made by Defendants.

71.     The statements made by Defendants disparage the Shelby Parties' trademark and trade dress rights, and the Shelby Parties' goods and services by

53896536;1

stating that they are infringing and/or by stating that SHELBY vehicles are Eleanor vehicles, and not SHELBY vehicles.  False representations as to the ownership of intellectual property or as to the source of products give rise to a claim of product disparagement by implication, even without making an express reference to the plaintiff.

72.    The Shelby Parties and Defendants are competitors in their efforts to supply customers with high end performance and/or collector vehicles.

73.    The Shelby Parties are informed and believe that Defendants recognized and intended that their false statements were likely to cause pecuniary loss to the Shelby Parties in that they were intended to, and did, (a) influence the Shelby Parties' business partners and licensees to cease doing business with the Shelby Parties and to cease designing and building vehicles that compete in the marketplace with Defendants' vehicles, and (b) persuade at least one of the Shelby Parties' customers to pay an unwarranted license fee to Defendants.

74.    As a direct and proximate result of Defendants' false statements, the Shelby Parties have suffered pecuniary damages through loss of actual sales and royalty payments, customer loyalty, and the trust of its business partners and licensees, as well as damage to the reputation and goodwill of the SHELBY Marks and the Shelby Parties, for which the Shelby Parties are entitled to an award of damages.

75.    Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and/or continuing harm to the Shelby Parties, for which they have no adequate legal remedy.

76.    Defendants' conduct in making false and libelous statements about the Shelby Parties and SHELBY Marks was and is intentional, willful and malicious, with a conscious disregard for the Shelby Parties' rights.  The Shelby Parties are therefore entitled to an award of punitive damages pursuant to California Civil Code Section 3294.

21

## SIXTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

77.     The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

78.     Defendants' misconduct constitutes unfair competition in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

79.     Defendants' misconduct has resulted in damage to the Shelby Parties, without limitation, in the form of lost profits and damage to reputation and goodwill.

80.     The acts of unfair competition alleged herein were committed with oppression, fraud and malice.  Specifically, Defendants made accusations of infringement and threats of litigation to the Shelby Parties' customer, licensee and business partner, and even threatened to cause the FBI or other government agencies shut down the business of a business partner of the Shelby Parties, with knowledge that (a) the Trust owns the SHELBY Marks and CSL controls the exclusive right to license such use, (b) ███████████████████████████ and (c) the Shelby Parties and the SHELBY Marks were and continue to be injured by this continuing conduct.  Therefore, the Shelby Parties request the imposition of exemplary damages pursuant to California Civil Code § 3294.

## SEVENTH CLAIM FOR RELIEF

(Violation of California Business & Professions Code § 17200, *et seq.*)

81.     The Shelby Parties incorporate the allegations of each foregoing paragraph as though fully set forth herein.

82.     California Business & Professions Code Section 17200 prohibits any unlawful, unfair or fraudulent business act or practice.  Defendants are competing with the Shelby Parties in the sales of collector vehicles and are reverse passing off SHELBY vehicles as Eleanor vehicles.  Defendants' misconduct set forth above

22

53896536;1

1 constitutes unfair competition in violation of the California Unfair Business Practices
2 Act, Cal Bus. & Prof. Code § 17200, *et seq*.

3    83.    Defendants have engaged in a business practice of ongoing unlawful
4 trademark and trade dress infringement in violation of the Shelby Parties' rights and
5 in order to compete unfairly against the Shelby Parties.  Unless Defendants' unfair
6 practices against the Shelby Parties are enjoined, Plaintiffs will continue to sustain
7 financial injury and irreparable damage to their business and reputation, and
8 competition will decrease in the market.

9    84.    Defendants' wrongful conduct has caused and, if not enjoined, will
10 continue to cause irreparable and continuing harm to the Shelby Parties, for which
11 they have no adequate legal remedy.  Accordingly, the Shelby Parties are entitled to
12 provisional, preliminary and permanent injunctive relief.  the Shelby Parties are also
13 entitled to restitution of all monies and property obtained from the Shelby Parties by
14 Defendants as a direct result of their wrongful conduct.

15            **EIGHTH CLAIM FOR RELIEF**
16                 (Declaratory Judgment)

17    85.    The Shelby Parties incorporate the allegations of each foregoing
18 paragraph as though fully set forth herein.

19    86.    An actual and justiciable controversy exists between the Shelby Parties
20 and Defendants regarding the parties' respective rights in regards to (a) SHELBY
21 vehicles, including the GT500, which do not contain the Eleanor Hood, Eleanor
22 Inset Lights, or any ELEANOR Marks; and (b) SHELBY vehicles manufactured
23 prior to ████████████████████████

24    87.    The Shelby Parties hereby seek a declaratory judgment that (a) SHELBY
25 vehicles, including the GT500, which do not contain the Eleanor Hood, Eleanor
26 Inset Lights, or any ELEANOR Marks, do not infringe on any of Defendants' rights,
27 and that Defendants have no right to prohibit anyone from using or exploiting any of
28 the SHELBY Marks under license from the Shelby Parties for any purpose; and (b)

1  SHELBY vehicles manufactured prior to ███████████████████

2  ████████████████████████████████████████

3  ████████████████████████ do not infringe on any of

4  Defendants' rights, and Defendants have no right to prohibit or in any way constrain

5  the ownership or sale of SHELBY vehicles manufactured prior to ████████

6  ████████████████████████████████████████

7  ████████████████████████████████████

8  ## PRAYER FOR RELIEF

9       WHEREFORE, the Shelby Parties pray for relief as follows:

10       1.    Finding that Defendants' activities complained of herein are unlawful

11  under Federal and California law;

12       2.    Judgment declaring that (a) SHELBY vehicles, including the GT500,

13  which do not contain the Eleanor Hood, Eleanor Inset Lights, or any ELEANOR

14  Marks, do not infringe on any of Defendants' rights, and that Defendants have no

15  right to prohibit anyone from using or exploiting any of the SHELBY Marks under

16  license from the Shelby Parties for any purpose; and (b) SHELBY vehicles

17  manufactured prior to ████████████████████████

18  ████████████████████████████████████████

19  ████████████████████ do not infringe on any of Defendants' rights, and

20  Defendants have no right to prohibit or in any way constrain the ownership or sale of

21  SHELBY vehicles manufactured prior to ████████████████

22  ████████████████████████████████████████████

23  ████████████████████████ ;

24       3.    Granting an injunction permanently enjoining the Defendants, their

25  employees, agents, officers, directors, managers, attorneys, successors, affiliates,

26  subsidiaries, and assigns, and all of those in active concert and participation with any

27  of the foregoing persons and entities from:

28

53896536;1

(a)     Falsely stating publicly or to any third person that any vehicles lacking the Eleanor Hood, Eleanor Inset Lights, or any ELEANOR trademarks, infringe on Defendants' rights; and

(b)     Falsely stating publicly or to any third person that SHELBY vehicles manufactured prior to ████████████████████ ████████████████ infringe on Defendants' rights.

4.     Awarding the Shelby Parties an amount up to three times the amount of their actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

5.     Directing that Defendants account to and pay over to the Shelby Parties all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate the Shelby Parties for the damages caused thereby;

6.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement;

7.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding the Shelby Parties their costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

8.     Awarding the Shelby Parties interest, including prejudgment and post-judgment interest, on the foregoing sums; and

9.     Awarding such other and further relief as the Court deems just and proper.

DATED: July 24, 2020                          **AKERMAN LLP**


                                        By:  */s/ Caroline H. Mankey*
                                             Caroline H. Mankey
                                             Attorneys for Plaintiffs
                                             Carroll Shelby Licensing, Inc.,
                                             and the Carroll Hall Shelby Trust

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiffs Carroll Shelby Licensing, Inc. and Carroll Hall Shelby Trust hereby demand a trial by jury.

DATED: July 24, 2020                              **AKERMAN LLP**

By:  */s/ Caroline H. Mankey*
Caroline H. Mankey
Attorneys for Plaintiffs
Carroll Shelby Licensing, Inc.,
and the Carroll Hall Shelby Trust

53896536;1