David L. Brandon, Esq., SBN 105505
dbrandon@clarkhill.com
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: 213-891-9100
Fax: 213-487-1156

Jason J. Keener, Esq., Admitted Pro Hac Vice
Jkeener@irwinip.com
**IRWIN IP LLC**
150 North Wacker Drive, Suite 700
Chicago, IL 60606
Telephone: 312-667-6286

Attorneys for Defendants and Counterclaimants
Denice Shakarian Halicki, Eleanor Licensing, LLC, and Gone in 60 Seconds Motorsports, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC., a California Corporation, and the CARROLL HALL SHELBY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>DENICE SHAKARIAN HALICKI, an individual, ELEANOR LICENSING, LLC, a Delaware limited liability company, GONE IN 60 SECONDS MOTORSPORTS, LLC, a Delaware limited liability company, and DOES 1 – 10,<br><br>Defendants. | Case No.: 8:20-cv-01344-MCS-DFMx<br>Assigned to the Hon. Mark C. Scarsi, Courtroom 7C<br><br>**NOTICE OF MOTION AND MOTION OF HALICKI PARTIES TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**NO HEARING WITHOUT FURTHER COURT ORDER PER COURT'S ORDER OF DECEMBER 12, 2022 (ECF N0. 354)** |
| DENICE SHAKARIAN HALICKI, an individual, ELEANOR LICENSING, LLC, a Delaware limited liability company, GONE IN 60 SECONDS | |

MOTORSPORTS, LLC, a Delaware limited liability company

Counter-claimants,

vs.

CARROLL SHELBY LICENSING, INC., a California Corporation, and the CARROLL HALL SHELBY TRUST, a trust organized under Texas law, CLASSIC RECREATIONS, LLC, an Oklahoma limited liability company, JASON ENGEL, an individual, TONY ENGEL, an individual, SPEEDKORE PERFORMANCE GROUP, LLC, a Wisconsin limited liability company, and Roes 1 to 10,

Counter-defendants.

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants and Counter-Claimants Denice Shakarian Halicki ("Denice Halicki"), Eleanor Licensing, LLC, and Gone in 60 Seconds Motorsports, LLC (collectively "the Halicki Parties") hereby move this Court, for certification of the Court's November 29, 2022 Order (ECF No. 350) for interlocutory appeal on three issues:

(1) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by requiring under prong 2 of that test an analysis of the character "whenever it appears" and a comparison for consistency based on every instance a character appears in media.

(2) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by

denying copyrightability to a character based on its repeated appearance in one work, regardless of how sufficiently delineated the character appears in that work.

(3) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by determining that an otherwise copyrightable character becomes uncopyrightable if a new iteration of the same character has traits and attributes varied with prior iterations.

The Halicki Parties further request the court to stay these proceedings until disposition of the interlocutory appeal.

This Halicki Parties' Motion is made pursuant to 28 U.S.C. § 1292(b).

This Halicki Parties' Motion is based on this Notice, the attached Memorandum of Points and Authorities, and on such oral argument as the Court may permit.

This Motion shall be heard without the filing of a reply brief and without a hearing pursuant to the Court's order of December 12, 2022 (ECF N0. 354).

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on January 6, 2023.

Dated: January 13, 2023

By: /s/ Jason J. Keener
Jason J. Keener
Irwin IP LLC

David L. Brandon
Clark Hill LLP

Attorneys for Defendants and Counter-claimants DENICE SHAKARIAN HALICKI; ELEANOR LICENSING, LLC; GONE IN 60 SECONDS MOTORSPORTS, LLC

## TABLE OF CONTENTS


**I. INTRODUCTION……………………………………………………………1**

**II. PROCEDURAL HISTORY…………………………………………….....4**

**A. Most Remaining Claims and Counterclaims Implicate Copyright Issues.....4**

**B. The Court's November 29, 2022 Order……………………………………5**

**III. LEGAL STANDARD…………………………………………………11**

**IV. ARGUMENT……………………………………………………………..11**

**A. The Court's Order Implicates Three "Controlling Question[s] of Law"….12**

**1. Issue 1 is a "Controlling Question of Law"……………………………13**

**2. Issue 2 is a "Controlling Question of Law"……………………………13**

**3. Issue 3 is a "Controlling Question of Law"……………………………14**

**B. There is "Substantial Ground for Difference of Opinion"…………………15**

**C. An Immediate Appeal "May Materially Advance the Termination of the Litigation"………………………………………………………………..18**

**D. The Court Should Stay These Proceedings Until Disposition of the Interlocutory Appeal…………………………………………………………21**

**V. CONCLUSION…………………………………………………………...21**

## TABLE OF AUTHORITIES

*Beeman v. Anthem Prescription Mgmt., Inc.*,
No. 04-407, 2007 WL 8433884, (C.D. Cal. Aug. 2, 2007)…………………...11, 18

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982)…………………………………………….*passim*

*In re Cintas Corp. Overtime Pay Litig.*,
06-01781, 2007 WL 1302496 (N.D. Cal. May 2, 2007)……………………….11

*Dalie v. Pulte Home Corp.*,
636 F. Supp. 2d 1025 (E.D. Cal. 2009)…………………………………...3, 19

*Daniels v. Walt Disney Co.*,
958 F.3d 767 (9th Cir. 2020)……………………………………………………..6

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015)…………………………………………………2, 4

*F.D.I.C. v. Anders*,
87cv430, 1991 WL 442874 (E.D. Cal. July 2, 1991)…………………………..19

*Filtrol Corp. v. Kelleher*,
467 F.2d 242 (9th Cir.1972)……………………………………………………21

*Halicki Films, LLC et al v. Sanderson Sales & Mktg. et al*,
547 F.3d 1213 (9th Cir. 2008)………………………………………………2, 4, 6

*Helman v. Alcoa Glob. Fasteners Inc.*,
09cv1353, 2009 WL 2058541(C.D. Cal. June 16, 2009) *aff'd*, 637 F.3d 986 (9th Cir. 2011)……………………………………………………………………12

*Hoffman v. Citibank*,
No. 06-0571, 2007 WL 5659406 (C.D. Cal. Feb. 15, 2007)…………………...11

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974)……………………………………………………12

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996)……………………………………………...13, 18

*Lopez v. Youngblood*,
1:07cv0474, 2009 WL 2062883 (E.D. Cal. July 15, 2009)……………………….12

*North v. Superior Hauling & Fast Transit, Inc.*,
18cv2564, 2019 WL 6794211 (C.D. Cal. July 10, 2019)……………………….18

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)……………………………………...2, 11, 15, 18

*Schoenberg v. Exportadora de Sal, S.A.*,
930 F.2d 777 (9th Cir. 1991)……………………………………………...12

*U.S. v. Woodbury*,
263 F.2d 784 (9th Cir. 1959)……………………………………………...11

# I. INTRODUCTION

The Court's November 29, 2022 order granting in substantial part the Shelby Parties summary judgment and denying the Halicki and CR Parties summary judgment on the issue of copyrightability (the "Order", ECF No. 350) warrants certification for interlocutory appeal under 28 U.S.C. § 1292(b) and a stay of these proceedings until its disposition.[1] The Order resolved three threshold, controlling issues of law critical for this case to proceed:

(1) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by requiring under prong 2 of that test an analysis of the character "whenever it appears" and a comparison for consistency based on every instance a character appears in media.

(2) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by denying copyrightability to a character based on its repeated appearance in one work, regardless of how sufficiently delineated the character appears in that work.

(3) Whether the District Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character by determining that an otherwise copyrightable character becomes uncopyrightable if a new iteration of the same character has traits and attributes varied with prior iterations.

The three requirements for certifying an order for interlocutory appeal under section 1292(b) are met: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may

[1] The portions of the Order denying summary judgment on substantial similarity, and granting and denying in part summary judgment on the contract claims are not subject to the instant Motion.

materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

First, each issue is a "controlling question[s] of law" because "resolution of [each] issue on appeal could materially affect the outcome of [the] litigation in the district court." *Cement*, 673 F.2d at 1026. The first issue allows the copyrightability of the Eleanor car character to be evaluated with only reference to the original *Gone in 60 Seconds* (the "Original Film") and the 2000 Remake (the "Remake"). The second issue allows the copyrightability to be evaluated with reference only to the Remake. The third issue allows a finding of copyrightability based on the common traits and attributes irrespective of perceived varied traits between iterations of the Eleanor car character, providing a clear separation of traits used in prong 2 and prong 3 of the analysis.

Second, there is "substantial ground for difference of opinion" on these issues because "reasonable jurists might disagree on [their] resolution." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). ***The Ninth Circuit has twice examined the Eleanor car character, identifying common traits and attributes across the franchise, most recently with an "implied yet strong suggestion that Eleanor is subject to [copyright] protection".*** (Order at 6 *citing Halicki Films, LLC et al v. Sanderson Sales & Mktg. et al*, 547 F.3d 1213, 1225 (9th Cir. 2008) and *DC Comics v. Towle*, 802 F.3d 1012, 1019-20 (9th Cir. 2015)). In the Order, the Court acknowledged "some ambiguity in the *Daniels* test that might cast doubt on the propriety of this approach-or the wisdom of the test as articulated." (Order at 9.) Despite its "reservations about the *Daniels* test", the Court stated its lack of authority to modify or restate the test. (Order at 10.)

Third, "an immediate appeal from the order may materially advance the ultimate termination of the litigation," because each issue could result in a finding that the Eleanor car character is copyrightable as a matter of law. The Court acknowledges the copyright issue is "an issue central to this case." (Order at 2.) A reversal on the

copyright issue would advance the termination of the litigation, because the Halicki Parties' have uncontroverted expert testimony as to the distinct features of the Eleanor Car Character as she appears in the Remake and the copying of those features in the unauthorized merchandise replicas from the Shelby and CR Parties.[2] Both the Halicki and Shelby Parties acknowledge this litigation cannot be resolved through settlement or otherwise unless and until the copyrightability of the Eleanor car character is resolved on appeal. (ECF No. 353 at 10.) As many of the remaining claims are intertwined with underlying copyright issues, an immediate appeal speeds the overall resolution of the case by resolving in advance critical threshold issues that could otherwise taint the remaining trial process with an error that could later require reversal on a post-judgment appeal. *See, e.g., Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1030 (E.D. Cal. 2009).

Section 1292(b) is designed to avoid the waste of judicial and party resources that results from proceeding to trial in such circumstances where there is a controlling threshold issue on which reasonable jurists could disagree and that requires reframing the fundamental legal standards under which the case can proceed.

This Order also merits immediate review due to the sweeping policy consequences implicated in fundamentally—and, the Halicki Parties respectfully submit, improperly—overhauling the copyright framework regarding merchandising of characters. The Order precludes copyright protection for: (1) any character that does not have the same set of common traits in every instance the character has ever appeared in media, even if the character is still recognizable to the audience as the same character; (2) any character, no matter how well delineated in a movie, unless and until a sequel to the movie is released; and (3) varied character looks as any such change destroys copyright protection for those changes, regardless of how distinctive and creative either the original or updated look is. This potential merchandising

[2] The Court previously excluding, in entirety, all three of the Shelby/CR Parties' purported experts, leaving the Halicki Parties' experts uncontroverted. (See ECF 232 at 14-17).

nightmare, for both established and new characters, sanctions unchecked merchandising by parties with no involvement in the character's creation or development. The Ninth Circuit has ruled that DC Comic's merchandising rights related to the Batmobile protect against unauthorized replicas made for two specific but very different versions of the Batmobile. *DC Comics,* 802 F.3d at 1016. Similarly, the Ninth Circuit held the Halicki Parties own all of the merchandising rights related to the Eleanor car character, including from the Remake. *Halicki Films,* 547 F.3d at 1222. Disney recently re-confirmed that the Halicki Parties own and Disney disclaims "any and all intellectual property rights and interests it has in the Eleanor car character [from the Remake]." (ECF No. 343-1.) The Halicki Parties respectfully submit the Order has improperly held the Eleanor car character to a higher standard than the Batmobile.

Accordingly, the Halicki Parties request this Court amend its Order to include a certification that the Order is appropriate for immediate interlocutory review and stay proceedings until its disposition.

## II. PROCEDURAL HISTORY

### A. Most Remaining Claims and Counterclaims Implicate Copyright Issues

The Halicki Parties have asserted copyright infringement (Counterclaim 6) against the Shelby and CR Parties for, among other things, their unauthorized manufacture, license, and sale of dozens of infringing replica Eleanors for $200,000-$300,000 each. The Halicki Parties have asserted other counterclaims that are intertwined with the copyright issues. Counterclaims 1, 2, 5 (breach of contract) are based, in part, on the Shelby and CR Parties' contractual agreements not to infringe the copyright to the Eleanor car character as she appears in the copyrighted Remake. Counterclaim 4 (False Designation of Origin), Counterclaim 7 (California Business & Professions Code §17200), and Counterclaims 8 and 9 (Declaratory Relief) are based, in part, on the Shelby and CR Parties' sale of replicas that improperly look like the Eleanor car character.

The Shelby Parties' claims are also intertwined with the copyright issues. Claim 2 (implied covenant of good faith and fair dealing) is based on the Halicki Parties' licensing of Eleanor replicas built before the prior settlement agreement. Claim 3 (False Designation of Origin) is based on the Halicki Parties licensing Eleanor replicas to indicate that they are Eleanor replicas. Claim 5 (Trade Libel), Claim 6 (Common Law Unfair Competition), Claim 7 (California Business & Professions Code §17200), and Claim 8 (Declaratory Judgment) are based on alleged Halicki Parties' statements that Eleanor replicas built by the CR Parties infringe the Halicki Parties' copyrights.

**B. The Court's November 29, 2022 Order**

As the copyrightability of the Eleanor car character is "an issue central to this case" (Order at 9), all parties moved for summary judgment on the issue. (ECF Nos. 287, 291, and 294.) Oral argument occurred on June 13, 2022 (ECF. No. 328.) The Order held that "Eleanor is not entitled to standalone copyright protection as a matter of law" and "grant[ed] in substantial part the Shelby Parties' motion for partial summary judgment on the issue of copyrightability and den[ied] the Halicki parties and CR Parties' motions on the issue." (Order at 23.)

While the Halicki Parties do not agree with all of the findings made by the Court, the Court made the following relevant legal findings:[3]

First, the Ninth Circuit has twice confronted the copyrightability of the Eleanor car character. In the first instance, the Ninth Circuit suggested Eleanor was a copyrightable character but remanded the issue. In the second instance, when examining the Batmobile, the Ninth Circuit gave an ***"implied yet strong suggestion that Eleanor is subject to [copyright] protection."*** (Order at 4-5). The Court concluded the Ninth Circuit twice came to the wrong conclusion based on alleged factual inaccuracies. The Ninth Circuit stated that in both the Original Film and the Remake, "thefts of other cars go largely as planned, but whenever the main human

[3] This Motion is focused on the issues in the Order relevant to certification. The absence of discussion concerning other portions of the Order is not a concession that no other legal errors are present or a waiver of later appeal as to other issues.

character tries to steal Eleanor, circumstances invariably become complicated." *Halicki Films*, 547 F.3d at 1225.[4] The Court found this conclusion "plainly false" as "several vehicle heists take left turns." (Order at 6). In reaching this conclusion, the Court pointed to two thefts in the Original Film and three thefts in the Remake that went awry. (*Id.*) However:

- according to the storyline in the movies, excluding Eleanor, as only 2 out of 48 (Original Film) and 5 out of 50 (Remake) thefts go awry, the Ninth Circuit was correct in saying the thefts went "***largely as planned***";
- in none of these thefts identified by the Court was ***the main character trying to steal Eleanor***; and
- the statement is correct that "whenever the ***main human character tries to steal Eleanor***, circumstances invariably become complicated."

Second, the Court applied the three-prong test for copyrightability of a character as stated in *Halicki Films, DC Comics*, and *Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020) (cleaned up):

> Although characters are not an enumerated copyrightable subject matter under the Copyright Act, there is a long history of extending copyright protection to graphically-depicted characters. However, not every comic book, television, or motion picture character is entitled to copyright protection. A character is entitled to copyright protection if (1) the character has physical as well as conceptual qualities, (2) the character is sufficiently delineated to be recognizable as the same character whenever it appears and displays consistent, identifiable character traits and attributes, and (3) the character is especially distinctive and contains some unique elements of expression.

(Order at 8.)

[4] In the Halicki Parties' Motion for Summary Judgment on Copyrightability, counsel unartfully substituted "all" for "largely". When asked about this change in terminology during oral argument, counsel for the Halicki Parties stated that the word "largely" should have been used instead.

Third, based on admissions, the Court found the first prong "readily met" because "across all four works, Ford Mustang automobiles are given the designation Eleanor and assigned feminine pronouns." (*Id.* at 8-9.)

Fourth, regarding the second prong, while questioning "the wisdom" of the conclusion, the Court held *Daniels* requires "a character cannot be afforded independent copyright protection unless there are multiple works in which the character appears." (*Id.* at 9.) This finding applies regardless of how often the character appears or how well delineated the character is in the movie. The Court held that a character receives no copyright protection unless and until it appears in "a collection of works." (*Id.*)

Fifth, regarding the second prong, the Court interpreted *Daniels* to mean if a work shows a character with traits varied with a prior iteration of the character, even a previously well-established character "could become uncopyrightable." (*Id.* at 9-10.) The Court acknowledged reservations about this view of *Daniels* as it implies that the James Bond character may lose copyright protection if a woman was cast in the role. (*Id.* at 10.)

Sixth, regarding the films, the Court made the following findings:

- **Original Film**: The "Eleanor designation [is used] to identify only 1973 Ford Mustang fastbacks with yellow and black coloring". (Order at 10 n.10.) While four Eleanors (with a "shared set of physical characteristics") appear in the film, "the film spends the most screen time with the third Eleanor" which has a "home" at "International Towers in Long Beach," is engaged in a police "chase sequence that lasts over 40 minutes" during which "the vehicle sustains significant damage" and where the main character escapes by having Eleanor perform a jump "through the air in a minute-long slow motion shot." (*Id.* at 11-12.) At the end of the movie, the main character finds a fourth Eleanor and drives off. (*Id.* at 12.) The Court questioned whether the four Eleanors shared conceptual characteristics, even though they shared the

Eleanor name and the star and only character identified in the opening credits is "ELEANOR". (*Id.*)

- **The Junkman:** The opening credits identify a "Special Guest" showing "a toy car, yellow and black Ford Mustang with damage mimicking that sustained to the vehicle in the chase scene from [Original Film]". (*Id.* at 12-13.) The film shows a "single vehicle depicted similar to the vehicle the protagonist drives and severely damages in the chase sequence in the [Original Film]" with "Eleanor" painted on its side (among other things). (Order at 13.) Characters "argue about Eleanor's present location" and the need to for her to be "transported to the location of the premiere of [Original Film]". (*Id.*) The main character drives Eleanor to "evade a gunman". (*Id.*) At the premiere, Eleanor is in the background of some shots, and "a stylized, painted depiction of a yellow Ford Mustang is featured on *Gone in 60 Seconds* posters". (*Id.*)
- **Deadline Auto Theft:** The movie mostly recycled and repurposed footage from the Original Film and The Junkman. (*Id.*)
- **2000 Remake: "**Eleanor" refers to a 1967 Ford Mustang fastback that some characters identify as a Shelby GT500.[5] (*Id.* at 14.) Eleanor is the main character's "unicorn" for which he has "never successfully stolen." (*Id.*) For most of the movie, Eleanor is a "gray and black" Ford Mustang "located at the International Towers in Long Beach." (*Id.*) The main character "talks to this instance of Eleanor as if it is human on several occasions." (*Id.*) Upon stealing Eleanor, the main character has a long police chase scene where Eleanor receives substantial damage and the main character escapes by having Eleanor perform a jump over a traffic jam. (*Id.*) At the end of the

[5] Although some characters erroneously refer to Eleanor as a Shelby or GT500, it is undisputed that she is not a Shelby GT500 but a highly modified 1967 Ford Mustang fastback with numerous distinctive differences identified by unrebutted expert opinions and exhibits. The Court disregarded this evidence as the film portrays and the Court perceived Eleanor as a Shelby GT500. (Order at 14 n.13)

movie, the main character receives a second Eleanor that is rusted and stripped of paint and attempts to drive off. (*Id.*)

Seventh, in evaluating consistent physical traits, the Court acknowledged Eleanor has always been a Ford Mustang fastback.[6] (Order at 17.) Despite this consistent physical trait, the Court held that physical variations in different versions of Eleanor required a finding that the Eleanor character had a "lack of delineation" and was "lightly sketched." (*Id.* at 16.) The Court noted Eleanor could be a 1973 (Original Film) or 1967 (Remake) Ford Mustang fastback; at the time of the Original Film a 1973 car was not an old, rare car, but at the time of the Remake a 1967 car is an old, rare car; Eleanor could be in pristine condition, damaged condition, and/or have the words "Eleanor" painted on its side; and some modifications made to Eleanor in the Remake do not appear on Eleanor in the Original Film. (*Id.* at 16-19.)

Eighth, in evaluating consistent conceptual traits, the Court held that in all four films the character is referred to as "Eleanor", although in *The Junkman*, the name is only referenced in a single scene. (Order at 19.) The Court found "Eleanor" synonymous with "1973 Ford Mustang fastback" and "accepted for the purpose of argument that the Eleanor name is a consistent, identifiable trait". (*Id.*) The Court found whenever the main character tried to steal Eleanor, she was difficult to keep stolen, but that the main character did not attempt to steal every Eleanor in every movie. (*Id.*) The Court found that when the main character drives Eleanor in chase scenes, Eleanor outmaneuvered police vehicles and executed long jumps, but not all Eleanors in all movies were involved in chase scenes. (*Id.* at 20.) The Court found while it was difficult for the main character to keep Eleanor stolen, it was only explicitly referred to as a "unicorn" or "elusive beauty" in the Remake. (*Id.*) Finally,

---

[6] While Court did not dispute that Eleanor from the Remake was a highly modified Ford Mustang fastback, without any evidentiary support, the Court noted that in the Original Film, Eleanor was treated as an unexceptional Ford Mustang fastback. (Order at 17). The Court disregarded the undisputed declarations of Denice Halicki and Michael Leone that Eleanor from the Original Film was not a stock car, but a completely stripped car requiring over 250 hours of customization work and painted in a color scheme that could not be obtained from Ford.

the Court found that while the main human character drove Eleanor in the chase scenes skillfully and with talent, that reflected on the driver and not on any trait of Eleanor to "always save her leading man." (*Id.*)

Ninth, the Court disregarded the Halicki and Leone declarations (and exhibits) establishing the extent of fame, merchandising, and brand loyalty of Eleanor and the *Gone in 60 Seconds* franchise over the last 48 years and made a factual conclusion on summary judgment (without any supporting evidence) that a "Ford Mustang called by the name Eleanor" would not be recognized by the relevant audience as related to the Eleanor car character from the *Gone in 60 Seconds* franchise.[7] (*Id.* at 21.) The Court concluded that the consistent physical and conceptual traits (a Ford Mustang fastback named Eleanor) are too lightly sketched to meet prong 2 of the *Halicki Films*, *DC Comics*, and *Daniels* test. (*Id.*)

Tenth, regarding prong 3, the Court held only traits identified in prong 2 as appearing in every iteration of the character are relevant to prong 3. (*Id.* at 22.) Accordingly, despite unrebutted testimony of Michael Leone (and exhibits) of the distinctive modifications made to Eleanor in the Remake, the Court did not examine those distinctive modifications under prong 3 as they were not present in the Original Film. (*Id.*) The Court found the name Eleanor not distinctive as it is a standard feminine human name in the US, despite no evidence that any other car has ever been called Eleanor. (*Id.*) The Court made a factual finding on summary judgment, without any supporting evidence, that the name Eleanor applied to a car, let alone a Ford Mustang, would not evoke recognition as the character from the *Gone in 60 Seconds* franchise. (*Id.* at 23.)

## III. LEGAL STANDARD

The requirements for certifying an order for interlocutory appeal under 28 U.S.C. § 1292(b) are: "(1) that there be a controlling question of law, (2) that there be

---

[7] As an example of fame, a Google search for the "moodsters character" from *Daniels* results in about 12,500 hits, many regarding the case, while a search for "Eleanor car character" results in about 8,600,000 hits.

substantial grounds for difference of opinion" about that question of law, and "(3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Cement*, 673 F.2d at 1026. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of [the] litigation in the district court." *Id*. at 1026; *see also Beeman v. Anthem Prescription Mgmt., Inc*., No. 04-407, 2007 WL 8433884, at *2 (C.D. Cal. Aug. 2, 2007). The issue need not dispose of the entire case to qualify as "controlling." *See, e.g., U.S. v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959); *Hoffman v. Citibank*, No. 06-0571, 2007 WL 5659406, at *2 (C.D. Cal. Feb. 15, 2007).

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution . . . ." *Reese*, 643 F.3d at 688. Although conflicting decisions are sufficient, *see, e.g., In re Cintas Corp. Overtime Pay Litig.*, 06-01781, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007), they are not necessary. *See Reese*, 643 F.3d at 688. Instead, it is sufficient if "novel and difficult questions of first impression are presented." (*Id.*)

Courts "apply pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Beeman*, 2007 WL 8433884, at *2.

## IV. ARGUMENT

### A. The Court's Order Implicates Three "Controlling Question[s] of Law"

The identified questions are "controlling" because their resolution "could materially affect the outcome of the litigation in the district court." *Cement*, 673 F.2d at 1026. An issue can be "controlling" even if reversal on that issue will not necessarily "terminate the litigation" if "resolution of the issue on appeal could materially affect the outcome of [the] litigation in the district court." *Id.* The Ninth Circuit has cited the principle that a "controlling question of law must encompass 'every order which, if erroneous, would be reversible error on final appeal.'" *Id.* (*quoting Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)); *see also Lopez v. Youngblood*,

1:07cv0474, 2009 WL 2062883, at *4 (E.D. Cal. July 15, 2009) (applying *Katz*); 16 *Wright & Miller, Fed. Prac. & Proc. Juris.* § 3930 (3d ed.) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings.").

Courts recognize that rulings resolving important governing legal standards that will affect the conduct of a trial and could give rise to reversal after trial are controlling questions under § 1292(b). *See, e.g., Schoenberg v. Exportadora de Sal*, 930 F.2d 777, 779 (9th Cir. 1991) (interlocutory appeal on order denying summary judgment based on choice of law determination); *Helman v. Alcoa Glob. Fasteners Inc.*, 09cv1353, 2009 WL 2058541, at *6 (C.D. Cal. June 16, 2009) (certifying interlocutory appeal on order because it was "preferable for the Court of Appeals to address the issue now, rather than to require the parties and [the court] to expend significant time and resources, which might ultimately be wasted" if the decision were reversed after a trial), *aff'd*, 637 F.3d 986 (9th Cir. 2011).

Here, the ruling on these fundamental copyright issues would "materially affect the outcome" of the litigation, because if the case goes forward and yields a judgment and the Ninth Circuit agrees with the Halicki Parties at that point, the trial will have to be redone. Section 1292(b) exists precisely to avoid this needless waste of resources where controlling issues governing the conduct of a trial can be resolved in advance. As the Ninth Circuit has put it, "an order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case" under standards that are later found to be erroneous. *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

The issues raised are pure questions of law that require no factual analysis. In ruling that the Eleanor car character was not copyrightable, the Court did not resolve any disputed facts. Instead, the Court disregarded witness declarations and exhibits and applied its interpretation of the legal test directly to the works itself. (Order at 7.)

**1. Issue 1 is a "Controlling Question of Law"**

Whether the Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character to require under prong 2 of that test an analysis of the character "whenever it appears" to require an analysis and comparison for consistency based on every instance a character appears in media is a "controlling question of law". The Court made decisions based on physical and conceptual traits appearing in multiple movies (the Original Film and Remake) but not present in all four movies. For example, the Court noted in *The Junkman*: Eleanor's name is spoken once and by an ancillary character (*Id.* at 19); the theft of Eleanor is not depicted (*Id.* at 20); and Eleanor does not outmaneuver police vehicles, execute death-defying jumps, or endure a long chase scene (*Id.*)

**2. Issue 2 is a "Controlling Question of Law"**

Whether the Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character to deny copyrightability to a character based on its repeated appearance in one work, regardless of how sufficiently delineated the character appears in that work, is a "controlling question of law." The Court noted physical and conceptual traits of Eleanor from the Remake were not present in one or more of the other films. If a correct interpretation of the law allows the analysis of Eleanor based on the Remake alone, there are sufficient characteristics identified by the Court (both physical and conceptual) to find her character copyrightable. With respect to physical traits, the Court would evaluate the numerous undisputed distinctive modifications that appear in Eleanor from the Remake. With respect to conceptual traits, the Order identifies numerous conceptual traits of Eleanor from the Remake, including but not limited to: the name Eleanor; hard to "keep stolen"; "can outmaneuver police vehicles, execute death-defying jumps, and endure long chases"; is "a 'unicorn' with a certain 'elusive beauty,' 'mystique,' and 'aura'"; exhibits "human conceptual characteristics, such as sensitivity and temperament"; "is

spoken to by the protagonist as if it were human"; and breaks down and doesn't restart (in both the chase scene and end of the movie). (Order at 19-20).

**3. Issue 3 is a "Controlling Question of Law"**

Whether the Court correctly interpreted the *Halicki Films*, *DC Comics*, and *Daniels* test regarding copyrightability of a character to require that an otherwise copyrightable character become uncopyrightable if a new iteration of the same character has traits and attributes varied with prior iterations is a "controlling question of law." While the Court found some consistent physical and conceptual traits among the iterations of Eleanor, it found them outweighed by varied traits in different iterations. If a correct interpretation of the law does not conflate the traits used to meet prong 2 with the traits analyzed for distinctiveness under prong 3, then these alleged varied traits do not defeat copyrightability but instead show different iterations of the same character, allowing each distinctive variation to be protected by copyright as different ***yet distinctive*** iterations of the same character. For example, each distinctive Batmobile is protected as a copyrighted character, not only those aspects of the Batmobile that are consistent across all iterations ever seen in any media. If the Ninth Circuit finds that the presence of some consistent physical ***and***[8] conceptual traits such as a Ford Mustang fastback[9] named Eleanor allow the audience who has seen the original Film to recognize Eleanor when watching the Remake, the presence of additional varied traits should not then destroy the Eleanor character.

**B. There is "Substantial Ground for Difference of Opinion"**

A substantial ground for difference of opinion exists "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Thus, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal

---

[8] Prong 2 only requires the presence of consistent physical ***or*** conceptual traits to allow the character to be recognizable.

[9] The Halicki and Leone declarations and exhibits explain why Eleanor from both the Original Film and Remake are not stock Ford Mustang fastbacks.

without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688.

The Order acknowledged that the two Ninth Circuit opinions addressing Eleanor ***both*** suggested and even gave a "strong suggestion" that Eleanor was copyrightable under the three-prong test as articulated in *Halicki Films* and *DC Comics*. (Order at 5-6). In both instances the Ninth Circuit detailed how Eleanor likely met each of the three prongs. There is substantial ground to believe that both Ninth Circuit panels did their job and properly examined Eleanor in making those statements. As discussed *supra*, the one item the Order states was factually "untrue" in the opinions is not. In commenting on consistent traits between the Original Film and the Remake, the Ninth Circuit stated that "thefts of the other cars go largely as planned, but whenever the main human character tries to steal Eleanor, circumstances invariably become complicated." This sentence is true. Despite stealing 98 cars (48 in the Original Film and 50 in the Remake), according to the storyline, the thefts go "***largely***" as planned, despite a handful going awry. Additionally, whenever the ***main character attempts to steal Eleanor***, things get complicated, not with the theft but with keeping Eleanor. No other alleged mischaracterization made in either Ninth Circuit opinion are identified.

The Order implicitly acknowledged substantial grounds for a difference of opinion. The Court noted that the Ninth Circuit's statements about the three-prong test are ambiguous and difficult to interpret. (Order at 9.) The Court noted its reservations with its interpretation of *Daniels* and questioned the wisdom of the wording in *Daniels* as it relates to the legal questions and the "propriety of this approach". (*Id.* 9.)

The substantial ground for a difference of opinion is also shown by the potentially stunning transformation of merchandising practices that may occur based on the law as set forth in the Order. Three examples make this clear. <u>First</u>, the Order states for a trait to be consistent it must be present in every iteration of the character to ever appear in any work. (*Id.* at 9.) This means that a Court examining the

copyrightability of a prolific character, such as the Batmobile, must examine every movie, tv show, comic, guest appearance, etc. where the Batmobile has ever appeared to determine whether it is always called the Batmobile (or simply appears without being named), always shows a high-tech gadget or weapon (potentially the same one), always shows its strength and speed, etc. Not only is this an unreasonable burden on a Court (requiring hundreds or thousands of hours of review), but there are guaranteed to be works where not every trait is always depicted or present (such as only showing the Batmobile in the background of the Batcave). It is reasonable to interpret prong 2 to be focused on the question of whether the audience recognizes the Batmobile (or Eleanor) character in a work based on some consistent trait and not be focused on whether every trait is always present in every work.

Second, the Order states a character cannot be copyrightable until the character appears in multiple works, despite how well developed or delineated that character is in the work. (Order at 9.) Under this rationale, imagine a highly distinctive character that appears repeatedly throughout a movie, such as Jar Jar Binks from *Star Wars: The Phantom Menace*. Despite how distinctive and immediately recognizable he is based on one movie, until the next movie came out, he would not be entitled to ***any*** protection as a copyrightable character, allowing anyone to create merchandise (toys and stuffed animals) that look identical to Jar Jar Binks without permission of the merchandising rights owner. This view requires massive new franchises to immediately come out with a sequel lest they be unable to protect merchandising of their characters (except possibly protecting the name of the character through trademark law). It also leads to unnecessary complications such as whether a movie released in two parts is "two works" allowing protection of its characters or "one work" such that no characters are protectible. There is a substantial ground for a difference of opinion on whether this interpretation is correct.

Third, the Order finds that varying a character's look may destroy copyright protection for those varied aspects of the look, or even the character as a whole,

regardless of how distinctive the original or updated look is. This is the issue with conflating the traits identified in prong 2 with the distinctive traits identified in prong 3. Consider again a Batmobile that appears identically in multiple works and then a new movie comes out with a very different looking Batmobile (which happens frequently). Other than being Black, called the Batmobile, and used by Batman, there may be no other physical similarities between the two vehicles, even though each is highly unique. Under the Court's reasoning, upon the updating of the look of the Batmobile, anyone could now make unauthorized replicas of *either* Batmobile as long as they did not call it the Batmobile, did not have Batman drive it, and painted it yellow instead of black. Under this interpretation, all of the creative work that went into the look of both the new and old iterations are no longer protectible as copyrightable characters as they are different variations of the same character, ***even though the audience recognizes both as the Batmobile***. There is a substantial ground for a difference of opinion on whether this is the correct interpretation.

### C. An Immediate Appeal "May Materially Advance the Termination of the Litigation"

In determining whether an interlocutory appeal will materially advance the ultimate termination of litigation, "courts consider the effect of a reversal by the court of appeals on the management of the case[,]" which "includ[es] whether litigation will be conducted in substantially the same manner regardless of the outcome of the appeal." *North v. Superior Hauling & Fast Transit, Inc.*, 18cv2564, 2019 WL 6794211, at *3 (C.D. Cal. July 10, 2019). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688.

Certification is warranted because "an immediate appeal may materially advance the ultimate termination of the litigation." *Cement*, 673 F.2d at 1026. This requirement is closely connected to the "controlling question" requirement, and where a court

concludes that early resolution of a question "might save time for the district court, and time and expense for the litigants," both requirements are generally met. 16 *Wright & Miller, Fed. Prac. & Proc. Juris.* § 3930 (3d ed.) (*citing, Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–319 (9th Cir. 1996)). Courts typically "apply pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Beeman*, 2007 WL 8433884, at *2. Here, several practical considerations point in favor of certification.

Obtaining a definitive decision on the correct interpretation of the *Halicki Films, DC Comics*, and *Daniels* test for copyrightability of a character would materially advance the termination of this litigation. The Order identifies this question as "an issue central to the case" and is an issue which all parties sought to resolve on summary judgment. (Order at 2). In the prior litigation between the Shelby and Halicki Parties, it was not until the Ninth Circuit issued *Halicki Films* "strong[ly] suggesting" (Order at 6) the Eleanor car character was copyrightable and the Halicki Parties were the legal owner with 100% of the merchandising rights for Eleanor that the parties were able to settle. In a recent joint statement, both ***the Halicki and Shelby Parties acknowledged that no resolution of the case is possible until there is a resolution on appeal on the copyrightability of the Eleanor car character.*** (ECF No. 353 at 10.) The Shelby Parties publicly acknowledged the centrality of this issue, issuing a press release that due to the Order, the case is now "Over."[10]

As with the prior litigation against the Shelby Parties, it is not seriously in dispute that the unauthorized merchandise replicas made by the Shelby and CR Parties have a substantially similar design to Eleanor from the Remake. (Mr. Leone's expert testimony on the subject is unrebutted). Even if a reversal did not result in the immediate termination, it would still advance its ultimate termination by eliminating a

[10] *See* Shelby Press Release dated 12/09/22 titled "Shelby's Legal Battle Over the 'Eleanor' Car is Over. Shelby Won!" located at https://www.businesswire.com/news/home/20221208006071/en/Shelby%E2%80%99s-Legal-Battle-Over-the-%E2%80%9CEleanor%E2%80%9D-Car-Is-Over.-Shelby-Won%21

key issue that otherwise could lead to reversal on appeal after final judgment. Such a post-trial reversal would substantially delay the ultimate termination. Where an interlocutory appeal could help "avoid the possibility of two significantly duplicative trials if the court's ruling is reversed," the third requirement under section 1292(b) is satisfied. *Dalie*, 636 F. Supp. 2d at 1030; *F.D.I.C. v. Anders*, 87cv430, 1991 WL 442874, at *3 (E.D. Cal. July 2, 1991) ("If the circuit court reverses after trial, a retrial will be required; that would delay the case longer than if the interlocutory appeal were decided prior to trial, even if the trial is postponed to await the resolution of the appeal.").

The fact that the Court set a two-day trial on the remaining claims does not warrant a different result. First, the parties have acknowledged that even a trial will not terminate this litigation; ***only a resolution of the copyrightability of the Eleanor car character on appeal will***. Second, as detailed *supra,* most of the remaining claims and counterclaims are intertwined with copyright issues. For example, although the Order acknowledged the Halicki Parties' claims against the Shelby and CR Parties for breach of contract are broader than simply copyright, they also encompass copyright issues as contracts expressly acknowledged the Halicki Parties are the owners of the copyrighted Eleanor car character, including from the Remake, and made multiple contractual promises not to use anything related to her look, including her copyright, in ***"any way, shape, or form."*** Any trial on such claims, regardless of which side prevails, would need to be re-done if the Ninth Circuit agrees with the Halicki Parties on any the issues raised herein. The same is true for the other Claims and Counterclaims identified *supra*. Even a two-day trial consumes a significant amount of the Court's and the parties' time and resources. Due to the admitted overriding importance of this issue, this is exactly the type of situation for which certification is appropriate.

Finally, regardless of the Ninth Circuit's resolution of the appeal, allowing an interlocutory appeal would advance the ultimate termination of the litigation. The

appeal would resolve a fundamental controlling question of the copyrightability of the Eleanor car character that would otherwise hang over the case through trial.

### D. The Court Should Stay These Proceedings Until Disposition of the Interlocutory Appeal

Certification under section 1292(b) does not automatically stay proceedings in the district court. *See* 28 U.S.C. k§ 1292(b) ("[An] application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."). Accordingly, if the Court grants certification, we request a stay of the proceedings pending the Ninth Circuit's decision to promote economy of time and effort for both the Court and the parties. "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir.1972).

District courts have discretion under Section 1292(b) to stay proceedings upon certification, and they routinely do so. Moreover, district courts possess inherent power to control their own dockets and calendars. In accordance with these authorities, the Halicki Parties seek a stay of these proceedings pending the Ninth Circuit's ruling. ***During the meet and confer on this Motion, the Shelby Parties agreed that should the Court certify any of these issues, it should also stay these proceedings.***

## V. CONCLUSION

For the foregoing reasons, the Halicki Parties respectfully request the Court grant the Motion, certify the three issues identified in the Order for interlocutory

appeal and stay all further proceedings pending its resolution.

Dated: January 13, 2023

By: /s/ Jason J. Keener
Jason J. Keener
Irwin IP LLC

David L. Brandon
Clark Hill LLP

Attorneys for Defendants and Counter-claimants DENICE SHAKARIAN HALICKI; ELEANOR LICENSING, LLC; GONE IN 60 SECONDS MOTORSPORTS, LLC

# CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendants and Counter-claimants Denice Shakarian Halicki, Eleanor Licensing, LLC, and Gone In 60 Seconds Motorsports, LLC , certifies that this brief contains 6,860 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 13, 2023

By: /s/ Jason J. Keener

Jason J. Keener
Irwin IP LLC

David L. Brandon
Clark Hill LLP

Attorneys for Defendants and Counter-claimants DENICE SHAKARIAN HALICKI; ELEANOR LICENSING, LLC; GONE IN 60 SECONDS MOTORSPORTS. LLC