**MURCHISON AND CUMMING LLP**
Anton N. Handal (State Bar No. 113812)
thandal@murchisonlaw.com
Georgiana A. Nikias (Stae Bar No. 283718)
gnikias@murchisonlaw.com
750 B Street Suite 2550
San Diego, CA 92101
Telephone: (619) 544-6838
Facsimile: (619) 544-1568

Attorneys for Counter-Defendants
Classic Recreations, LLC, Jason Engel and Tony Engel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC., a California corporation, and the CARROLL HALL SHELBY TRUST, <br><br> Plaintiff, <br><br> vs. <br><br> DENICE SHAKARIAN HALICKI, an individual, ELEANOR LICENSING, LLC, a Delaware limited liability company, GONE IN 60 SECONDS MOTORSPORTS, LLC, a Delaware limited liability company, and DOES 1-10, <br><br> Defendants. <br><br> AND RELATED COUNTER-CLAIMS. | Case No. 8:20-cv-01344 MCS(DFMx) <br><br> [Assigned to The Honorable Mark C. Scarsi, Courtroom 7C] <br><br> **AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY COUNTER-DEFENDANTS CLASSIC RECREATIONS, LLC, JASON ENGEL AND TONY ENGEL** <br><br> Original Complaint Filed: <br> July 24, 2020 <br><br> Final Pre-Trial Conference Date: <br> March 6, 2023 <br><br> Current Trial Date: <br> March 21, 2023 |

# TABLE OF CONTENTS

I.   HALICKI PARTIES' COUNTERCLAIMS AGAINST CR PARTIES AND CR PARTIES' EVIDENCE IN OPPOSITION AND AFFIRMATIVE DEFENSES THERETO ...................................................... 1

   A.   Summary of Halicki Parties' Counterclaims Against CR Parties ......... 1

      1.   Counterclaim 1: Breach of Written Contract ................................ 1

      2.   Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a) ...................................................................... 1

      3.   Counterclaim 12: Trademark Infringement .................................. 1

   B.   Elements Required to Establish Counterclaims ................................... 2

      1.   Counterclaim 1: Breach of Written Contract ................................ 2

      2.   Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a) ...................................................................... 2

      3.   Counterclaim 12: Trademark Infringement .................................. 5

   C.   Key Evidence in Opposition to Counterclaims ................................... 6

      1.   Counterclaim 1: Breach of Written Contract ................................ 6

      2.   Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a) ...................................................................... 7

      3.   Counterclaim 12: Trademark Infringement ................................ 10

   D.   Summary Statement of CR Parties' Affirmative Defenses ................ 13

      1.   Second Affirmative Defense: Statute of Limitations ................... 13

      2.   Third Affirmative Defense: Laches ............................................. 13

      3.   Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence ............................................................................. 13

      4.   Fifth Affirmative Defense: Unclean Hands ................................ 13

      5.   The CR Parties Waive the Following Affirmative Defenses ....... 13

   E.   Elements Required to Establish the Affirmative Defenses ................ 14

1. Second Affirmative Defense: Statute of Limitations ................... 14

2. Third Affirmative Defense: Laches ............................................... 15

3. Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence .................................................................................. 15

4. Fifth Affirmative Defense: Unclean Hands .................................. 15

F. Key Evidence in Support of Each of the CR Parties' Affirmative Defenses ........................................................................ 16

1. Second Affirmative Defense: Statute of Limitations ................... 16

2. Third Affirmative Defense: Laches ............................................... 17

3. Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence .................................................................................. 18

4. Fifth Affirmative Defense: Unclean Hands .................................. 19

II. Anticipated Evidentiary Issues .......................................................................... 20

A. CR Parties' and Shelby Parties Motions *in Limine* .............................. 21

B. Halicki Parties' Motions in Limine ........................................................ 21

III. Germane Issues of Law ........................................................................................ 21

A. Have the CR Parties Used any of the Halicki Parties' Trademarks in a Manner Likely to Cause Consumer Confusion? ...... 21

IV. Bifurcation Issues .................................................................................................. 22

V. Jury Trial ................................................................................................................ 22

VI. Attorneys' Fees ...................................................................................................... 22

VII. Abandonment of Issues ......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) ...................................... 15

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979) ...................................................... 22

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp*., 419 F.3d 576, 580 (7th Cir.2005) .......................... 2

*Danjaq, LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir. 2001)..................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28 n. 1, 32 (2003) ........... 2, 3, 4

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1987).. 22

*E&J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994)........ 15

*Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924) ............................................................................................................... passim

*Global Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848 853-54 (C.D. Cal. 2019)... 2

*Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009). . 16

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993).............................................. 11

*Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) .......... 16

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) ........................................................................................................................................ 14

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d, 1352, 1358 (9th Cir. 1985) ................................ 9

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)........................................ 11

*McArdle v. Mattel Inc.*, 456 F.Supp.2d 769, 783 (E.D.Tex.2006)................................................. 4

*Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F.Supp.2d 648, 652 (D.Del.2006) ............................ 4

*Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).............. 11

*Oasis W. Realty, LLC v. Goldman*, 51 CAl.4th 811, 821 (2011)...................................................... 2

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756 (2014) ................................................................................................................................................... 12

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018) ....... 22

*Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982)........................................ 16

*POM Wonderful, LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) .. 16

*Stolle Mach. Co*., 2015 WL 1137429, at *12................................................................... 4

*Stone Creek, Inc. v. Omnia Italian Design, Inc*., No. 15-17418, 2017 WL 3724419, at *10 (9th Cir. Aug. 30, 2017) ................................................................................................... 11

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)...................... 11, 12

*Traffix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 28 (2001)..................................... 8

*TSX Toys, Inc. v. 655, Inc.*, Case No. ED CV 14-02400-RGK (DTBx), 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015)................................................................................. 14

*Two Pesos, Inc. v. Taco Cabana, Inc.* 505 U.S. 763, 765 n. 1 (1992)........................................... 8

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015) ..................................................... 15

*United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-603 (9th Cir. 1995)........................ 15

*Wal-Mart Stores, Inc., v. Samara Brothers, Inc.*, 520 U.S.205, 210 (2000) ................................ 8

*Werner v. Evolve Media, LLC*, Case No. 2:18-cv-7188-VAP-SKx, 2020 WL 3213808 (C.D. Cal. Apr. 28, 2020) ................................................................................................... 14

*Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 252 (1st Cir.2004) ........................... 4

**Statutes**

15 U.S.C. § 1117(a) .................................................................................................. 6, 23

15 U.S.C. § 1125(a) ........................................................................................... 1, 2, 4, 7

Cal. Civ. Proc. Code § 337 ............................................................................................ 14

Cal. Civ. Proc. Code § 338(d).......................................................................................... 14

**Other Authorities**

Ninth Circuit Model Jury Instructions § 15.1 .................................................................... 5

Trademark Amendments Act of 1999, Pub. L. 106-43, § 3(b), 113 Stat. 218, 219...................... 11

**Rules**

Local Rule 16-4............................................................................................................ 1

Pursuant to Local Rule 16-4, *et seq*., counter-defendants Classic Recreations, LLC, Jason Engel and Tony Engel (collectively, the "CR Parties") respectfully submit the following amended memorandum of contentions of fact and law in connection with their defenses to the counterclaims asserted by defendants and counter-claimants Denice Halicki, Eleanor Licensing, LLC, and Gone in 60 Seconds Motorsports, LLC (collectively, the "Halicki Parties").

# I. HALICKI PARTIES' COUNTERCLAIMS AGAINST CR PARTIES AND CR PARTIES' EVIDENCE IN OPPOSITION AND AFFIRMATIVE DEFENSES THERETO

## A. Summary of Halicki Parties' Counterclaims Against CR Parties

### 1. Counterclaim 1: Breach of Written Contract

The Halicki Parties assert a counterclaim against the CR Parties for breach of a license agreement for alleged continued use of "the intellectual property rights… [and trademarks] relating to 'Gone in 60 Seconds' and 'Eleanor.'"  (Dkt. 69, ¶ 95(b).)

### 2. Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a)

The Halicki Parties assert a "reverse passing off" counterclaim against the Shelby Parties and the CR Parties under 15 U.S.C. § 1125(a), for false designation of origin by virtue the Counterclaim defendants' alleged advertising, production, and sales of "GT500Es, GT500CRs, GT500CR Carbons, and Eleanors which caused confusion and deception in the marketplace as to the "Eleanor" and "Gone in 60 Seconds" franchise. (Dkt. 69, ¶¶ 104, 105).

### 3. Counterclaim 12: Trademark Infringement

The Halicki Parties assert a Trademark Infringement counterclaim against the Shelby Parties and the CR Parties. The Halicki Parties claim that the CR Parties' are liable for trademark infringement based on the alleged use of the Halicki Marks, ELEANOR and GONE IN 60 SECONDS in online advertising, registration and use

of the domain name www.eleanormustang.net, and on engine and car badging as exemplified on Exhibits 19-20 of the Second Amended Counterclaim.  (Dkt. 69, ¶ 196(b).)

### B.   Elements Required to Establish Counterclaims

The elements required to establish the Halicki Parties' counterclaims are as follows.

### 1.   Counterclaim 1: Breach of Written Contract

"The well-established elements for breach of contract are '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'"  *Global Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848 853-54 (C.D. Cal. 2019) (*quoting Oasis W. Realty, LLC v. Goldman*, 51 CAl.4th 811, 821 (2011)).

### 2.   Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a)

The Halicki Parties plead false designation of origin by "reverse passing off" in violation of Section 43(a)(1)(A) of the Lanham Act arising from the Shelby and CR Parties' alleged "advertising, production and sales" of "'Eleanor' vehicles" and "'Eleanor' parts" and branding them as "GT500Es," "GT500CRs," "GT500CR Carbons" and "Eleanors."  Doc. 69 ¶¶ 102-110.

"Passing off" refers to counterfeit production; it occurs when a firm "puts someone else's trademark on its own (usually inferior) goods" *(Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp., 419 F.3d 576, 580 (7th Cir.2005))*, for instance, "the Coca–Cola Company's passing off its product as Pepsi–Cola" (*Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n. 1, 32 (2003))*. "Reverse passing off" is the converse: a firm sells someone else's goods or services, misrepresenting them as its own—for instance, the Coca–Cola Company taking Pepsi–Cola's flagship beverage and marketing it as the Coca–Cola Company's own product. *Dastar,* 539 U.S. 23 at 28 n.1, 32.  In this case, the Halicki Parties' "reverse

passing off" claims that the CR Parties' automobiles were actually those of the Halicki Parties.

The Supreme Court has pointed out that the Lanham Act protects the ability to control one's brand. *Dastar*, 539 U.S. at 32, 34, 37. However, it does not protect the ability to control one's inventions or innovations. *Id*. With respect to false-designation claims specifically, the Act's use of the term "origin" does not refer to "the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id*. at 32. It denotes only "the producer of the tangible product sold in the marketplace"—and, by extension, possibly also "the trademark owner who commissioned or assumed responsibility for production of the physical product." *Id*.

As *Dastar* makes plain, the only way the Halicki Parties can support a 'reverse passing off' claim is where the infringer falsely represents a product's geographic origin or represents that it has manufactured the tangible product that is sold in the marketplace when it did not in fact do so. *Dastar*, 539 U.S. at 29, 31. In *Dastar*, the Court observed that the defendant would have violated § 43(a) if it "had bought some of [the plaintiff's] videotapes and merely repackaged them as its own." *Id*. at 31. This is the essence of what the Halicki Parties claim in ¶ 104 of the SSCC (Dkt. 69, ¶104).

But because the defendant "produced its very own series of videotapes" and was thus the manufacturer of "the physical 'goods' that [were] made available to the public," the court held that the defendant's designation of itself as the "origin" of the goods was not false, even though its products were almost wholesale copies of the plaintiff's previous work. *Id*.

Thus, reselling pirated goods, as the Halicki Parties claim here, that have been manufactured by someone else carries different consequences than making your own copies of those goods and marketing them under your own mark. "[T]aking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the

intellectual property contained in those goods and incorporating it into your own goods does not." *Stolle Mach. Co*., 2015 WL 1137429, at \*12 (citation omitted); see also *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir.2004) (no reverse passing off where the defendant copied software ideas and concepts but did not take "tangible copies" of the software and market them under its own mark); *Zyla v. Wadsworth, Div. of Thomson Corp*., 360 F.3d 243, 252 (1st Cir.2004) (no reverse passing off where the defendant was the manufacturer of the physical book, even though it allegedly failed to attribute the source of its creative content); *McArdle v. Mattel Inc*., 456 F.Supp.2d 769, 783 (E.D. Tex. 2006) ("'[O]rigin of goods' means the physical producer of tangible products marketed and sold."); *Monsanto Co. v. Syngenta Seeds, Inc*., 443 F.Supp.2d 648, 652 (D. Del. 2006) (holding that corn seed—not the seed's genetic traits—was the tangible product relevant to a reverse passing off claim).

In this case, the Halicki Parties have clarified that their Third Counter Claim is for "reverse passing off" only. The Court has reserved on the issue of whether a "reveres passing off" claim requires an actual physical under *Dastar*, 539 U.S. at 34. For purposes of the Lanham Act, where the initial ideas for the products came from is irrelevant. *Id*. at 32; see also *Enzo Biochem, Inc. v. Amersham PLC,* 981 F. Supp. 2d 217, 228 (S.D.N.Y.2013) (no reverse passing off where defendant represented goods as its own and plaintiff did not manufacture the goods but only "had a distribution contract with [defendant] by which [defendant] would manufacture the products and distribute them").

The Halicki Parties' have not plead and may not assert a 15 U.S.C. § 1125(a) trade dress claim, except in the context of, as an alternative to their "reverse passing off". The Halicki Parties did not plead and may not claim that the Shelby Parties and/or CR Parties are liable for false designation of origin under 15 U.S.C. §1125(a) by selling Eleanor replicas, using allegedly held copyrights, using design aspects, using the look or image and goodwill of the Eleanor car character

unless they were physical products originally manufactured by the Halicki Parties.. Doc. 266 at 26; *see also* Doc. 210 at 41.

The Halicki Parties have not plead and may not assert infringement of trade dress except in the context of "reverse passing off".   Trade dress is the non-functional physical detail and design of a product or its packaging, which identifies the product's source and distinguishes it from the products of others. Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.   In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display. (*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. '*Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own.*") (emphasis added); *Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership LP*, 380 F.3d 126, 131 (2d Cir. 2004); *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at *6 (C.D. Cal. Jan. 9, 2014) (express reverse passing off "occurs where the defendant removes or obliterates the plaintiff's trademark, without authorization, and then profits off of the goods even though they were actually produced by the plaintiff")).

### 3.    Counterclaim 12: Trademark Infringement

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  Ninth Circuit Model Jury Instructions § 15.1.  The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace.  *Id.* The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.  *Id.* To prove infringement, the Halicki Parties must prove, by a preponderance of

the evidence, that the CR Parties, without consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of the Eleanor marks in connection with the distribution or advertisement of goods, such that the CR Parties use of the marks is likely to cause confusion as to the source of the goods. It is not necessary that the marks used by the defendant be an exact copy of the Halicki Parties' marks. Rather, the Halicki Parties must demonstrate that, viewed in their entirety, the marks used by the CR Parties is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question. *Id*.

The Halicki Parties seek a finding of exceptional case under 15 U.S.C. § 1117(a) to entitle them to punitive damages and attorney's fees. Dkt. 69, ¶ 108.

### C. Key Evidence in Opposition to Counterclaims

#### 1. Counterclaim 1: Breach of Written Contract

Key to the CR Parties' defense to this counterclaim is the lack of evidence of any use by the CR Parties of any of the Halicki Parties' trademarks. The evidence anticipated to be offered by the Halicki Parties include Exhibits 10 and 19-23 to the Counterclaim, which on their face are unauthenticated and inadmissible printouts of third-party websites.  None of the evidence produced by the Halicki Parties establish that the CR Parties built the cars in the photographs in violation of any agreement. Even if the Halicki Parties are able to authenticate and admit any evidence of breach, they have no evidence that any vehicles were made or sold outside of the authorized license period or that they were damaged as a proximate result of a breach.

It is anticipated that the Halicki's key evidence will include the CR Parties' website and promotional material, none of which include or make any references to the Halicki Trademarks. In defense the CR Parties will likely offer: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4)

testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015; 10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### 2.      Counterclaim 3: False Designation of Origin Under 15 U.S.C. § 1125(a)

The Halicki Parties have clarified that their False Designation of Origin Claim is based on "reverse passing off" of their allegedly protected Trade Dress.  To succeed they need to prove that the CR Parties acquired goods from the Halicki Parties and represented them as their own. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. '*Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own*.") (emphasis added); *Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership LP*, 380

F.3d 126, 131 (2d Cir. 2004); *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at *6 (C.D. Cal. Jan. 9, 2014) (express reverse passing off "occurs where the defendant removes or obliterates the plaintiff's trademark, without authorization, and then profits off of the goods even though they were actually produced by the plaintiff"). The Halicki Parties did not plead and may not offer evidence that goods which the CR Parties originally produced were confused with trade dress, if any, belonging to the Halicki Parties.

Critical to the CR Parties' defense to this counterclaim is the lack of evidence of any physical product made by the Halicki Parties that was sold by either the CR or Shelby Parties as their own. (See *Dastar*, etc.). This is not a passing off case. The Halicki Parties have clarified at the Pretrial Conference on March 7, 2023 [Dkt. # 386] that their Third Counterclaim is for reverse passing off only. The Halicki Parties' allegations regarding "advertising, production [or] sales of 'Eleanor' [or] 'Eleanor' parts" or any branding of such vehicles or parts as Shelby vehicles or any word, false designation of origin, false or misleading description, or representation of fact likely to cause any confusion as to the source of the CR Parties' goods and services to the extent that they fail to relate to "reverse passing off" are irrelevant. (Dkt. 69, ¶ 104); AECOM, 348 F. Supp. 3d at 1049. To the extent that issues of trade dress are relevant, trade dress encompasses the design of a product. Unregistered trade dress, as the Halicki Parties present here, requires a showing of non-functionality, distinctiveness, and likelihood of confusion to support a finding of infringement. *See Wal-Mart Stores, Inc., v. Samara Brothers, Inc.*, 520 U.S.205, 210 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc*. 505 U.S. 763, 765 n. 1 (1992) (noting that trade dress involves "the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques"); *Traffix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 28 (2001) (noting that "the design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source;

and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods). In. the context of their Counterclaim, the Halicki Parties may only offer evidence of the CR Parties taking physical trade dress produced by the Halicki Parties and passing them off as their own. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. '*Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own*.") (emphasis added); *Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership LP*, 380 F.3d 126, 131 (2d Cir. 2004); *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at *6 (C.D. Cal. Jan. 9, 2014) (express reverse passing off "occurs where the defendant removes or obliterates the plaintiff's trademark, without authorization, and then profits off of the goods even though they were actually produced by the plaintiff")

It is anticipated that the Halicki's key evidence will include CR Parties' website and promotional material, none of which include or make any references to "Eleanor" or other alleged property of the Halicki Parties. None of which support a trade dress claim.

In support of their defense the CR Parties point out that the Halicki Parties do not offer expert testimony or evidence of Secondary Meaning or direct customer testimony, to support their "reverse passing off" claim.  Under such circumstances direct evidence of the CR Parties taking physical goods made by the Halicki parties and representing them as their own is the only evidence that can support a reverse passing off claim.  Survey evidence is the best and only direct evidence of secondary meaning or the lack thereof in a passing off claim. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d, 1352, 1358 (9th Cir. 1985).

In their defense the CR Parties will likely offer: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015; 10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### 3.   Counterclaim 12: Trademark Infringement

Critical to the CR Parties' defense to this counterclaim is the lack of evidence of any use by the CR Parties of any of the Halicki Parties' trademarks in a manner likely to cause confusion after the termination of its license from the Halicki Parties. The evidence attached by the Halicki Parties to their Counterclaim as Exhibits 19-23 are unauthenticated and inadmissible printouts of third-party websites that were

not created by the CR Parties, do not prove any post-license use of trademarks by the CR Parties, and do not establish whether the CR Parties built the cars in the photographs or whether they were built by the CR Parties when it was a licensee of the Halicki Parties.

The Halicki Parties have the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any damage caused by the infringement of a registered trademark. The Halicki Parties must prove both the fact and the amount of damages.  *See Intel Corp. v. Terabyte Int'l, Inc*., 6 F.3d 614, 621 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1407 (9th Cir. 1993). Recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."  *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

Willfulness is a prerequisite to disgorgement of a defendant's profits, even after the Trademark Amendments Act of 1999, Pub. L. 106-43, § 3(b), 113 Stat. 218, 219 (codified in relevant part at 15 U.S.C. § 1117).  *Stone Creek, Inc. v. Omnia Italian Design, Inc*., No. 15-17418, 2017 WL 3724419, at *10 (9th Cir. Aug. 30, 2017). An award of the defendant's profits "is not automatic and must be granted in light of equitable considerations"; equity dictates that the plaintiff must show that the defendant's infringing acts were accompanied by some form of intent.  *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1405–06 (9th Cir.  1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (*per curium*).

The Halicki Parties also seek a finding that this case is "exceptional" under 15 U.S.C. § 1117(a) and seek recovery of their attorney's fees incurred in defending against the CR Parties on their allegations of trademark infringement.   An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position – considering both the governing law and the

facts of the case – or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756 (2014); *see also SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (adopting the *Octane Fitness* standard to Lanham Act cases).

It is anticipated that the Halicki's key evidence will include CR Parties' website and promotional material, none of which include or make any references to "Eleanor" or other alleged property of the Halicki Parties. It is worthy of note that the Halicki Parties have no copyrights in the name or physical attributes of the car from the remake.

In support of their defense the CR Parties will offer: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property

rights as of February 23, 2015;10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### D.  Summary Statement of CR Parties' Affirmative Defenses

The CR Parties have pleaded and intend to pursue the following affirmative defenses:

#### 1.  Second Affirmative Defense: Statute of Limitations

The CR Parties' Second Affirmative Defense is that the counterclaims asserted by the Halicki Parties are all barred by the applicable statute of limitations.

#### 2.  Third Affirmative Defense: Laches

The CR Parties' Third Affirmative Defense is that the counterclaims asserted by the Halicki Parties are all barred by the doctrine of laches.

#### 3.  Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence

The CR Parties' Fourth Affirmative Defense is that the counterclaims asserted by the Halicki Parties are all barred by the doctrines of waiver, estoppel, and acquiescence.

#### 4.  Fifth Affirmative Defense: Unclean Hands

The CR Parties' Fifth Affirmative Defense is that the counterclaims asserted by the Halicki Parties are all barred by the doctrine of unclean hands.

#### 5.  The CR Parties Waive the Following Affirmative Defenses

The CR Parties waive the following Affirmative Defenses on the sole ground that they constitute challenges to the Halicki Parties' prima facie case and do not need to be asserted as affirmative defenses: First (Failure to State a Claim), Ninth (Failure to Perform), Tenth (Performance Excused), Fourteenth (Injury not Immediate), Sixteenth (Copyright Misuse), Seventeenth

(Invalidity/Unenforceability of Copyrights), Eighteenth (No Damage – Copyright), Twentieth (First Amendment), Twenty-First (Speculative Damages), Twenty-Second (Invalid Copyrights), Twenty-Fourth (Merger and/or Scenes-a-Faire), Twenty-Fifth (*De Minimis* Use), Twenty-Sixth (Eleanor Character Not Subject to Copyright Protection)), Twenty-Seventh (Design Elements Not Subject to Copyright Protection), or Twenty-Eighth Affirmative Defenses (No Substantial Similarity). *E.g. TSX Toys, Inc. v. 655, Inc.*, Case No. ED CV 14-02400-RGK (DTBx), 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015); *Werner v. Evolve Media, LLC*, Case No. 2:18-cv-7188-VAP-SKx, 2020 WL 3213808 (C.D. Cal. Apr. 28, 2020).  The CR Parties reserve the right to challenge the sufficiency of the Halicki Parties' satisfaction of their burden at trial regarding each of the issues raised in these Affirmative Defenses.

The CR Parties waive the following Affirmative Defenses solely on the ground that they are duplicative of other Affirmative Defenses that the CR Parties will pursue at trial: Seventh (Claimants' Own Negligence) (duplicative of Fifth) and Nineteenth (Trademarks Used to Injure) (duplicative of Fifth).

The CR Parties do not intend to pursue the Sixth (Failure to Mitigate), Eighth (Third Parties), Eleventh (Rescission/Termination), Twelfth (Privileged Conduct), Thirteenth (Ordinary Business Risks), Fifteenth (Abandonment), or Twenty-Third (Abuse of Process) Affirmative Defenses.

### E.     Elements Required to Establish the Affirmative Defenses

#### 1.     Second Affirmative Defense: Statute of Limitations

The applicable statute of limitations are: three years for trademark infringement under the analogous California Statute. (*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); Cal. Civ. Proc. Code § 338(d)) and four years for breach of written contract (Cal. Civ. Proc. Code § 337).

### 2.      Third Affirmative Defense: Laches

To prove the affirmative defense of laches, a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.  *Danjaq, LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir. 2001).

### 3.      Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence

To prove waiver, the CR Parties must show that there was clear, decisive and unequivocal conduct by the Halicki Parties which indicated a purpose to waive the legal rights involved.  *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-603 (9th Cir. 1995).

To prevail on an estoppel defense, the CR Parties must prove (1) that the Halicki Parties knew of the CR Parties' infringing conduct; (2) that the Halicki Parties either intended that the CR Parties rely on their conduct or acted in a way that gave the CR Parties the right to believe the Halicki Parties intended them to rely; (3) that the CR Parties were ignorant of the true facts; and (4) that the CR Parties relied on the Halicki Parties' conduct to the CR Parties' detriment. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015).

To prove acquiescence, the CR Parties must show that the Halicki Parties, by affirmative word or deed, conveyed their consent to the CR Parties with respect to use of their intellectual property.  "Estoppel by acquiescence includes two elements of laches… and adds (3) affirmative conduct inducing the belief that [the plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) (*quoting E&J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994)).

### 4.      Fifth Affirmative Defense: Unclean Hands

To prevail on an unclean hands defense, the CR Parties must show that the

Halicki Parties engaged in misconduct that relates to the claims that the Halicki Parties are asserting. *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009). To invoke this doctrine, the CR Parties must prove by clear and convincing evidence that the Halicki Parties engaged in wrongfulness, willfulness, bad faith, or gross negligence. *POM Wonderful, LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (*citing Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982).

**F.    Key Evidence in Support of Each of the CR Parties' Affirmative Defenses**

**1.    Second Affirmative Defense: Statute of Limitations**

The statute of limitations for trademark infringement is three years under the analogous California Statute and four years for breach of contract. Denice Halicki testified at her deposition that the Halicki Parties were aware of the alleged trademark infringement and of the alleged breach of contract on February 23, 2015, which is five years and nine months before the Halicki Parties' counterclaim was filed on November 16, 2020. The statute of limitations for the Halicki Parties' trademark infringement claim ran on February 23, 2018, and the statute of limitations for their breach of contract claim ran on February 23, 2019. The Halicki Parties' Cease and Desist Letter to the CR Parties is dated December 31, 2019, 10 months after the expiration of the breach of contract claim statute of limitations.

It is anticipated that the Halicki's key evidence will include CR Parties' website and promotional material, none of which include or make any references to "Eleanor" or other alleged property of the Halicki Parties. It is worthy of note that the Halicki Parties have no copyrights in the name or physical attributes of the car from the remake.

In support of these facts is, *inter alia*: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki

**CR PARTIES' AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015; 10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### 2.      Third Affirmative Defense: Laches

The evidence will show that the Halicki Parties knew about the alleged breach of contract and the alleged trademark infringement on February 23, 2015, as Denice Halicki and Michael Leon both testified to in their depositions. The Halicki Parties then waited five years and nine months, after the Shelby Parties filed their complaint against them, to file their counterclaim against the CR Parties.  The evidence shows that in those five years and nine months, the Halicki Parties did not take any action to stop, or to seek redress for, the alleged breach of contract or trademark

infringement. The Cease and Desist Letter sent by the Halicki Parties and their counsel to the CR Parties were not sent until December 31, 2019, which is four years after the discovery of the alleged breach of contract and trademark infringements.

In support of these facts is, *inter alia*: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015;10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### 3. Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence

It is anticipated that the Halicki's key evidence will include CR Parties'

website and promotional material, none of which include or make any references to "Eleanor" or other alleged property of the Halicki Parties. It is worthy of note that the Halicki Parties have no copyrights in the name or physical attributes of the car from the remake.

In support of these facts is, *inter alia*: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015; 10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties.

### 4.    Fifth Affirmative Defense: Unclean Hands

It is anticipated that the Halicki's key evidence will include CR Parties'

website and promotional material, none of which include or make any references to "Eleanor" or other alleged property of the Halicki Parties. It is worthy of note that the Halicki Parties have no copyrights in the name or physical attributes of the car from the remake. In support of these facts is, *inter alia*: 1) the testimony of Jason Engel and Tony Engel concerning their avoidance of any post-license uses of the Halicki Parties' trademarks; 2) press releases and press coverage regarding the cars designed and built by the CR Parties starting in 2009; 3) communications with the Halicki Parties about the alleged infringement dating back to at least 2015; 4) testimony of Jason Engel and/or Jason Childress regarding communications with the Halicki Parties about the CR Parties' alleged infringement dating back to at least 2015; 5) 2015 trial testimony in the case of *Eleanor Licensing, LLC v. Classic Recreations, LLC* (Los Angeles Superior Court Case No. EC062924); 6) the Halicki Parties' and their counsel's cease and desist letters to the CR Parties (dated December 31, 2019) and to SpeedKore Performance Group (dated June 29, 2020); 7) the testimony of M. Neil Cummings regarding the very limited and narrow restrictions on the Shelby Parties' licensing of the GT500 under the terms of the 2009 settlement agreement between the Shelby Parties and the Halicki Parties and his instructions to the CR Parties for complying with the Settlement Agreement; 8) the License Agreement between the Shelby Parties and the CR Parties and amendments thereto; 9) the deposition testimony of Denice Halicki in which she states she was aware that the CR Parties were allegedly infringing on the Halicki Parties' intellectual property rights as of February 23, 2015;10) the testimony of Michael Leone confirming the same; and 11) the trademark information posted publicly at the United States Patent and Trademark Office for the trademarks the Halicki Parties allege were infringed upon by the CR Parties..

## II.   ANTICIPATED EVIDENTIARY ISSUES

The anticipated evidentiary issues will primarily be those already addressed in the parties' motions *in limine*. Motions *in limine* were filed on December 6, 2021.

(Dkts. 197, 202, 203, 204, 205, 207, 208, 209.)  The Court orally ruled on the motions on January 10, 2022, and issued a reasoned decision thereon on March 24, 2022.  (Dkt. 256.)

### A.  CR Parties' and Shelby Parties Motions *in Limine*

**1.**  MIL No. 1 to Exclude Evidence of Prior Conviction and Court Filing.  (Dkt. 203).  This was GRANTED.

**2.**  MIL No. 2 to Exclude Evidence of Sales of Accused Vehicles Sold Outside of the Limitations Period.  (Dkt. 204).  This was DENIED.

**3.**  MIL No. 3 to Bar References to Accused Cars as Counterfeits or Eleanors.  (Dkt. 202).  This was GRANTED.

**4.**  MIL No. 4 to Exclude Evidence Obtained from Third-Party Websites.  (Dkt. 205).  This was DENIED without prejudice to the Shelby Parties' specific objections at trial.

### B.  Halicki Parties' Motions in Limine

**5.**  MIL No. 1 to Preclude Reference to Irrelevant Shelby Trademarks and Trade Dress.  (Dkt. 197).  This was DENIED.

**6.**  MIL No. 2 to Preclude Argument or Evidence Concerning Costs Incurred by the Shelby/CR Parties.  (Dkt. 207).  This was DENIED.

**7.**  MIL No. 3 to Preclude Calling Trial Counsel as Witness.  (Dkt. 208).  This was DENIED.

**8.**  MIL No. 4 to Preclude Reference to Design Elements of Prior Vehicles.  (Dkt. 209).  This was DENIED.

## III.  GERMANE ISSUES OF LAW

### A.  Have the CR Parties Used any of the Halicki Parties' Trademarks in a Manner Likely to Cause Consumer Confusion?

To prevail on a claim for trademark infringement, a plaintiff must show that: (1) it has a valid, protectable mark, and (2) the defendant's use of the mark is likely

to cause consumer confusion.  *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
897 F.3d 1008, 1022 (9th Cir. 2018).  It is the CR Parties' position that the Halicki
Parties have disclosed no admissible evidence of any use by the CR Parties of their
marks, but only unauthenticated website printouts and posts for which there are no
witnesses who have personal knowledge.  Moreover, the Halicki Parties have
disclosed no evidence, and conducted no discovery, as to any of the eight factors of
the test for proving a likelihood of consumer confusion.  The eight-factor *Sleekcraft*
test is used in the Ninth Circuit to analyze the likelihood of confusion question in all
trademark infringement cases.  *E.g. Dr. Seuss Enterprises, L.P. v. Penguin Books
USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1987) (*citing AMF, Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979)).  The eight factors are as follows: (1) strength of the
mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual
confusion; (5) marketing channels used; (6) type of goods and the degree of care
likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark;
(8) likelihood of expansion of the product lines.  *Id.*

## IV.   BIFURCATION ISSUES

The Parties do not seek to bifurcate any issues.

## V.   JURY TRIAL

The Halicki Parties never made any jury demand, and instead sought a court
trial from the very outset of this case.  (Dkt. 62 at 14:3-4 ("The Halicki Parties
request a court trial due to the confidential nature of the Confidential Settlement
Agreement [between the Halicki Parties and the Shelby Parties].")  Based on the
Court's November 29, 2022, summary judgment rulings rejecting the Halicki Parties'
character copyright assertions and substantially narrowing the universe of claims to
be tried, the CR Parties and the Shelby Parties waived their jury trial rights as to the
remaining claims.

## VI.   ATTORNEYS' FEES

The CR Parties seek their attorneys' fees for defending against the Halicki

**CR PARTIES' AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Parties' Lanham Act claims pursuant to 15 U.S.C. § 1117(a) and under Breach of Contract.

## VII.   ABANDONMENT OF ISSUES

The CR Parties do not intend to pursue their First, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, or Twenty-Eighth Affirmative Defenses, except as elements of denial of, and challenge to, the sufficiency of the Halicki Parties' proof of all necessary elements of their counterclaims and except as they are subsumed within other affirmative defenses that the CR Parties are continuing to pursue, as discussed in section I.D. above.

DATED:  March 14, 2023                          MURCHISON AND CUMMING LLP


By:  */s/Anton N. Handal*
     Anton N. Handal
     Georgiana A. Nikias
     Attorneys for Counter-Defendants
     Classic Recreations, LLC, Jason
     Engel and Tony Engel

## **CERTIFICATE OF SERVICE**

      I certify that counsel of record who are deemed to have consented to electronic service are being served on March 14, 2023, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First-Class Mail on this date.

Saneida Slayton