**MURCHISON & CUMMING LLP**
Anton N. Handal (State Bar No. 113812)
thandal@murchisonlaw.com
Georgiana A. Nikias (State Bar No. 283718)
gnikias@murchisonlaw.com
750 B Street Suite 2550
San Diego, CA 92101
Telephone: (619) 544-6838
Facsimile: (619) 544-1568

Attorneys for Counter-Defendants
Classic Recreations, LLC, Jason Engel and Tony Engel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC., a California corporation, and the CARROLL HALL SHELBY TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>DENICE SHAKARIAN HALICKI, an individual, ELEANOR LICENSING, LLC, a Delaware limited liability company, GONE IN 60 SECONDS MOTORSPORTS, LLC, a Delaware limited liability company, and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIMS. | Case No. 8:20-cv-01344 MCS(DFMx)<br><br>[Assigned to The Honorable Mark C. Scarsi, Courtroom 7C]<br><br>**COUNTER-DEFENDANTS CLASSIC RECREATIONS, LLC, JASON ENGEL AND TONY ENGEL'S AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JOINDER WITH THE SHELBY PARTIES PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Original Complaint Filed:<br>    July 24, 2020<br><br>Final Pre-Trial Conference Date:<br>    March 6, 2023<br><br>Current Trial Date:<br>    March 21, 2023 |

# TABLE OF CONTENTS

I.      Joinder ............................................................................................................... 5

II.     FINDINGS OF FACT .................................................................................... 5

III.    CONCLUSIONS OF LAW .............................................................................. 8

        A.    Halicki Parties' First Counterclaim for Breach of Contract ................ 8

        B.    Halicki Parties' Third Counterclaim For False Designation Of
              Origin By: "Reverse Passing Off". ...................................................... 9

        C.    The Halicki Parties' Twelfth Counterclaim For Trademark
              Infringement. ................................................................................... 11

        D.    The CR Parties Second Affirmative Defense: Statute of
              Limitations ....................................................................................... 14

        E.    The CR Parties Third Affirmative Defense: Laches ........................... 15

        F.    The CR Parties Fourth Affirmative Defense: Waiver, Estoppel,
              and Acquiescence .............................................................................. 16

        G.    The CR Parties Fifth Affirmative Defense: Unclean Hands ............. 18

IV.     CONCLUSIONS AND RELIEF .................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) ..................................... 17

*Brown v. Goldstein*, 34 Cal.App. 4th 418 (2019) ........................................................................ 8

*Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at *6 (C.D. Cal. Jan. 9, 2014) ............................................................................................................. 10

*Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001) .................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) ....................... 10

*E&J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994) ........ 17

*Enzo Biochem, Inc. v. Amersham PLC*, 981 F.Supp.2d 217, 228 (S.D.N.Y.2013) ...................... 10

*Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009). . 19

*Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) .......... 19

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) ........................................................................................................................................... 14

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756 (2014) ............................................................................................................................................ 11, 13

*Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982) ........................................ 19

*POM Wonderful, LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) .. 19

*Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership LP*, 380 F.3d 126, 131 (2nd Cir. 2004) ..................................................................................................................................... 10

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015) .................................................................................. 17

*United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-603 (9th Cir. 1995) ......................... 16

**Statutes**

Cal. Civ. Proc. Code § 337 ............................................................................................................. 14

Cal. Civ. Proc. Code § 338(d) ........................................................................................................ 14

**Other Authorities**

CACI 300 .......................................................................................................................................... 8

Ninth Circuit Model Jury Instructions § 15.1 ................................................................................. 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Counter Defendants Classic Recreations, LLC, Jason Engel and Tony Engel (collectively, the "CR Parties") by and through their attorneys, hereby submit the following Amended Proposed Findings of Fact and Conclusions of Law with respect to the counterclaim by Denice Shakarian Halicki, Eleanor Licensing, LLC and Gone in 60 Seconds (collectively, "Halicki Parties") pursuant to Local Rule 16-4.

## I.      JOINDER

To the extent appropriate, the CR Parties Join in the Shelby Parties Proposed Findings of Fact and Conclusions of Law.

## II.     FINDINGS OF FACT

**1)**      This case concerns the CR Parties, Shelby Parties, and the Halicki Parties.

**2)**      Counter Defendant Classic Recreations, LLC ("CR"), is a limited liability company organized under the laws of Oklahoma, whose principal place of business is in Oklahoma.

**3)**      The 1974 film "Gone in 60 Seconds", the 1982 film "The Junkman", the 1983 film "Deadline Auto Theft", and the 2000 remake of "Gone in 60 Seconds" all feature Ford Mustang cars identified in each film as "Eleanor".

**4)**      The Halicki Parties own the copyrights to the 1974 film "Gone in 60 Seconds", the 1982 film "The Junkman", and the 1983 film "Deadline Auto Theft", (the "trilogy").

**5)**      The Halicki Parties do not own copyrights to the 2000 remake, "Gone in 60 Seconds" (the "Remake").

a) The Halicki Parties assigned their entire right, title and interest in the copyright to the Remake to Jerry Bruckheimer, Inc., and Hollywood Pictures prior to the creation of the Remake.

**6)**      The "Eleanor" identity in all three movies is not a copyrightable character.

a)  The Halicki Parties failed to register a copyright to the "Eleanor" character

from the movie.

b) The Halicki Parties do not hold a registered copyright in or to the Remake.

7) The Halicki Parties and the CR Parties entered into a License Agreement dated November 1, 2007, to make cars that utilized the names "Eleanor" and "Gone in 60 Seconds" (the "CR License").

8) The CR License purported to authorize the CR Parties to use the "Licensed Properties" set forth in Paragraph 1.1 of the CR License, to include trademarks, and copyrightable material relating to "Gone in 60 Seconds" and "Eleanor".

9) Paragraph 1.1 of the CR License is ambiguous as to what intellectual property rights the Halicki Parties purported to license and is interpreted to mean that the Licensed Properties does not include trade dress or copyrighted materials relating to "Gone in 60 Seconds" and "Eleanor". *Brown v. Goldstein*, 34 Cal.App. 4th 418 (2019).The Halicki Parties terminated the CR License on October 16, 2009.

10) The CR License does not provide for the survival of relevant obligations of the Parties after termination.

11) In November 2009, the CR Parties entered into a license with the Shelby Parties to make modified 1967 Ford Mustangs which utilized intellectual property owned by the Shelby Parties ("the CR/Shelby License").

12) Under the CR/Shelby License, the CR Parties began manufacturing a car referred to as the GT500CR in or about 2010. They also began manufacturing a car referred to as the GT500CR Carbon sometime later.

13) The GT500CR Carbon has the same look as the GT500CR but with a carbon fiber body.

14) The carbon body of the GT500CR Carbon is a functional unique concept created by the CR Parties, to reduce the weight of the car.

15) The CR Parties have stopped making cars utilizing the Halicki Parties Licensed Properties after the Halicki Parties terminated the CR License.

**16)** The Halicki Parties have disclaimed trade dress infringement allegations in this case against the Shelby parties.

**17)** The GT500CR and GT500CR Carbon are made under the CR/Shelby License.

**18)** The Halicki Parties do not make or sell cars.

**19)** The GT500CR and GT500CR Carbon are not made using parts taken from licensed "Eleanor" cars.

**20)** The GT500CR and GT500CR Carbon do not use any of the "Eleanor" or "Gone in 60 Seconds" marks.

    a) The CR Parties did not remove, and replace with their own, any of the Halicki Parties' claimed trademarks or trade dress from a Halicki Parties licensed car.

**21)** The Halicki Parties do not own distinctive features of the GT500CR and GT500CR Carbon.

**22)** The distinctive look and feel of the GT500CR and GT500CR Carbon are based on modifications of Ford Mustangs, whose look and feel are not owned by the Halicki Parties.

**23)** In an Order this Court ruled that the asserted Eleanor character is not entitled to standalone copyright protection as a matter of law and dismissed the Halicki Parties' counterclaims expressly premised on copyright, namely the Fourth, Sixth, Seventh and Ninth counterclaims for common law unfair competition, copyright infringement, violation of Business & Professions Code §17200 and declaratory relief.

**24)** In the Order, the Court granted summary judgment determining that the Halicki Parties hold no copyrights in or to the Eleanor character from the 2000 Remake.

**25)** The Halicki Parties were aware of facts of an alleged breach of the CR License and alleged trademark infringement on or before February 23, 2015.

**26)**     The Halicki Parties freely and knowingly delayed no less than five years and nine months, after discovery of these facts to file their counterclaim against the CR Parties.

**27)**     In those five years and nine months, the Halicki Parties, with knowledge of the CR Parties' continuous sale of GT500CR and GT500CR Carbons, took no action to stop, or to seek redress for, the alleged breaches of the CR License or claimed unauthorized use of their trademarks.

**28)**     By not taking any action, the Halicki Parties the CR Parties deemed that the Halicki Parties approved of the CR Parties' continued manufacture and sale of the GT500CR and GT500CR Carbons.

**29)**     The Halicki Parties waited until December 31, 2019, to send a Cease-and-Desist Letter to the CR parties despite discovery of alleged breaches of the CR License or claimed unauthorized use of their trademarks in February 2015.

## III.     CONCLUSIONS OF LAW

### A.     Halicki Parties' First Counterclaim for Breach of Contract

**30)**     The Halicki Parties have not proven by a preponderance of the evidence that the CR Parties breached the CR License. CACI 300, *et seq*.

    a)  The proper interpretation of the CR License Agreement is that the Halicki only licensed intellectual property that they owned at the time of the execution of the License Agreement. *Brown v. Goldstein*, 34 Cal.App. 4th 418 (2019).

**31)**     b)     Under a proper interpretation of the CR License Agreement, the Halicki Parties did not License copyrights in or to the "Eleanor" character of any car that was referred to as the "Eleanor" in the Remake. Brown v. Goldstein, 34 Cal.App. 4th 418 (2019).The Halicki Parties have not proven by a preponderance of the evidence that any of the terms of the CR License survived its termination in October 2009 and is no longer enforceable. *Id*.

**32)**     The Halicki Parties have not proven by a preponderance of the

1    evidence that the CR Parties are entitled to damages arising from an alleged breach
2    of the CR License. *Id.*

3    **33)**    The Halicki Parties are only entitled to remedies available under the
4    CR License, if any, that are provable by a preponderance of the evidence.

5    **34)**    The Eleanor Car as depicted in the 2000 Remake is not entitled to
6    copyright protection.

7    **35)**    The CR Parties entered into the CR License with the Halicki Parties
8    that authorized the CR Parties to use Licensed Properties related to a 1967 Ford
9    Mustang depicted in the 2000 Remake.

10   **36)**    The CR License was terminated by the Halicki Parties on October 16,
11   2009, with no relevant surviving terms.

12   **37)**    The CR Parties did not in breach the CR License because they have
13   not used any of the Licensed Properties since termination of the CR License.

14   **38)**    The CR Parties have not used the Halicki Parties' trademarks in
15   labeling, marketing, selling, and offering for sale any car utilizing the names
16   "Eleanor" and "Gone in 60 Seconds" after termination of the CR License.

17   **39)**    The Halicki Parties are not damaged by the CR Parties use of the
18   names "Eleanor" and "Gone in 60 Seconds".

19   **40)**    The Court finds in favor of the CR Parties on the First Counterclaim
20   for Breach of the CR License and the that the Halicki Parties take nothing.

21   **41)**    The Court finds that the CR Parties are the prevailing parties and
22   entitled to reasonable attorney's fees and costs.

23   **B.    Halicki Parties' Third Counterclaim For False Designation
24   Of Origin By: "Reverse Passing Off".**

25   **1**    The Halicki Parties have clarified at the Pretrial Conference on March
26   7, 2023 [Dkt. # 386] that their Third Counterclaim is for reverse passing off only.
27   "[A] reverse palming off claim requires proving: '(1) that the [product] at issue
28   originated with the plaintiff; (2) that [the] origin of the [product] was falsely

designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.'". *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003), *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at \*6 (C.D. Cal. Jan. 9, 2014)*; Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership LP*, 380 F.3d 126, 131 (2nd Cir. 2004).

**1**     The Court finds that there is no "reverse passing off" where the CR Parties represented goods as their own and the Halicki Parties did not manufacture the goods. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003), *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at \*6 (C.D. Cal. Jan. 9, 2014) *Societe,* 380 F.3d at 131 (2nd Cir. 2004); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F.Supp.2d 217, 228 (S.D.N.Y.2013)

**2**     The Court finds that the Halicki Parties do not make or sell cars utilizing the names "Eleanor" and "Gone in 60 Seconds" and therefore, the products at issue are not originated by the Halicki Parties.

**3**     The Court finds that the CR Parties have not falsely represented the origin of cars or car products they made.

**4**     The Court finds that the CR Parties have not misrepresented any of the Halicki Parties goods or products as their own. *Cobra Sys., Inc. v. Accuform Mfg., Inc.*, No. 2:13-CV-05932-ODW, 2014 WL 102608, at \*6 (C.D. Cal. Jan. 9, 2014) (express reverse passing off "occurs where the defendant removes or obliterates the plaintiff's trademark, without authorization, and then profits off of the goods even though they were actually produced by the plaintiff").

**5**     The Court finds that the cars made by the CR Parties to include the GT500CR and GT500CR Carbon were properly represented as being manufactured by the CR Parties.

**6**     The Court finds that the CR Parties have not removed any of the

Halicki Parties trademarks from products to which they are attached in order to call them their own.

**7** The Court finds that the CR Parties have not misrepresented any of the Halicki Parties' products as their own.

**8** The Court finds that the CR Parties did not advertise, produce, or sell "Eleanor" and "Eleanor" parts branding them as Eleanor vehicles "GT500Es" "GT500CRs ""GT500CR Carbons" and "Eleanors".

**9** The Court finds that the CR Parties advertising, production and sale of cars did not create confusion in the marketplace among purchasers of custom made "GT500Es" "GT500CRs ""GT500CR Carbons" and "Eleanors".

**10** The Court finds that the CR Parties did not counterfeit the names "Eleanor" and "Gone in 60 Seconds".

**11** The Court finds that the Halicki Parties are not damaged by virtue of the CR Parties utilization of the names "Eleanor" and "Gone in 60 Seconds".

**12** The Court finds that the Halicki Claims under the Third Counterclaim against the CR Parties is not an exceptional case under U.S.C. § 1117(a) and *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756 (2014); *see also SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (adopting the *Octane Fitness* standard to Lanham Act cases).

**13** The Court finds in favor of the CR Parties on the Third Counterclaim for Reverse Passing Off and the that the Halicki Parties take nothing.

**14** The Court awards the CR Parties their attorneys' fees for defending against the Halicki Parties' Lanham Act claims pursuant to 15 U.S.C. § 1117(a)

**C.    The Halicki Parties' Twelfth Counterclaim For Trademark Infringement.**

**15** A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  (Ninth Circuit Model Jury Instructions § 15.1)

**16**     To prove infringement, the Halicki Parties must prove, by a preponderance of the evidence, that the CR Parties, without consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of the Eleanor Gone in 60 Seconds marks in connection with the distribution or advertisement of goods, such that the CR Parties use of the marks is likely to cause confusion as to the source of the goods. *Id.*

**17**     The Halicki Parties must demonstrate that, viewed in their entirety, the marks used by the CR Parties is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question. *Id.*

**18**     The Court finds that the CR Parties did not, without authorization, use in commerce, a reproduction, copy, counterfeit or colorable imitation of the "Eleanor" and "Gone in 60 Seconds" marks in connection with the distribution or advertisement of goods or services.

**19**     The Court finds that the CR Parties did not advertise, produce, or sell cars or car parts using "Eleanor" and "Gone in 60 Seconds" since the termination of the CR License and within three years from the filing of the Halicki Parties' Counterclaim.

**20**     The Court finds that the CR parties have not engaged in the license, manufacture, building, production, distribution, provision, advertising, promotion, offering for sale, and sale of goods using the "Eleanor" and "Gone in 60 Seconds" marks, or other marks that are confusingly similar, throughout the United States since the termination of the CR License and, within three years from the filing of the Halicki Parties' Counterclaim.

**21**     The Court finds that the manufacture, building, production, distribution, provision, advertising, promotion, offering for sale, and sale of goods by the CR Parties did not lead to confusion in the relevant consuming public as to their origin since the termination of the CR License and, within three years from the

filing of the Halicki Parties' Counterclaim.

**22** The Court finds that the manufacture, building, production, distribution, provision, advertising, promotion, offering for sale, and sale of goods by the CR Parties did not lead deceive consumers as to the origin, source, sponsorship, or affiliation of the CR Parties' goods since the termination of the CR License and, within three years from the filing of the Halicki Parties' Counterclaim.

**23** The Court finds that the manufacture, building, production, distribution, provision, advertising, promotion, offering for sale, and sale of goods by the CR Parties did not cause consumers to believe that the CR Parties' goods are sold, authorized, endorsed, or sponsored by the Halicki Parties since the termination of the CR License and, within three years from the filing of the Halicki Parties' Counterclaim.

**24** The Court finds that the manufacture, building, production, distribution, provision, advertising, promotion, offering for sale, and sale of goods by the CR Parties did not cause consumers to believe that the CR Parties are in some way affiliated with or sponsored by the Halicki Parties since the termination of the CR License and, within three years from the filing of the Halicki Parties' Counterclaim.

**25** The Court finds that the CR Parties use of the Halicki Parties trademarks were authorized, and the CR Parties never willfully infringed on any of the Halicki Parties marks.

**26** The Court finds that the Halicki Parties are not damaged by virtue of the CR Parties utilization of the names "Eleanor" and "Gone in 60 Seconds".

**27** The Court finds that the Halicki Claims under the Twelfth Counterclaim against the CR Parties is not an exceptional case under U.S.C. § 1117(a) and *Octane Fitness*, 134 S. Ct. at 1756 (2014); *see also SunEarth*, 839 F.3d at 1181 (9th Cir. 2016) (adopting the *Octane Fitness* standard to Lanham Act cases).

**28** The Court finds in favor of the CR Parties on the Twelfth

Counterclaim for Trademark Infringement and the that the Halicki Parties take nothing.

**29**      The Court awards the CR Parties their attorneys' fees for defending against the Halicki Parties' Lanham Act claims pursuant to 15 U.S.C. § 1117(a).

**D.      The CR Parties Second Affirmative Defense: Statute of Limitations**

**30**      The statute of limitations for trademark infringement under the Third and Twelfth Counterclaims is three years under the analogous California Statute (*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); Cal. Civ. Proc. Code § 338(d))

**31**      The statute of limitations is four years for breach of contract (Cal. Civ. Proc. Code § 337).

**32**      The Court finds that the Halicki Parties were aware of alleged trademark infringement and of an alleged breach of contract on February 23, 2015, which is five years and nine months before the Halicki Parties' counterclaim was filed on November 16, 2020.

**33**      The Court finds that the statute of limitations for the Halicki Parties' trademark infringement claim ran on February 23, 2018,

**34**      The Court finds that the statute of limitations for the Halicki Parties' breach of contract claim ran on February 23, 2019.

**35**      The Court finds that the CR Parties have proven by a preponderance of the evidence that the Halicki Parties have failed to bring their First Counterclaim within four years of their discovery of facts giving rise to their First Counterclaim against the CR Parties for Breach of Contract.

**36**      The Court finds in favor of the CR Parties and against the Halicki Parties on the First Counterclaim for Breach of Contract on the CR Parties Statute of Limitations defense.

**37**      The CR Parties have proven by a preponderance of the evidence that

the Halicki Parties have failed to bring their Third Counterclaim against the CR Parties for "Reverse Passing Off" within three years of their alleged discovery of facts giving rise to the claim.

**38** The Court finds in favor of the CR Parties and against the Halicki Parties on the Third Counter claim for Reverse Passing Off on the CR Parties Statute of Limitations defense.

**39** The Court finds that the CR Parties have proven by a preponderance of the evidence that the Halicki Parties have failed to bring their Twelfth Counterclaim against the CR Parties for Trademark Infringement within three years of their alleged discovery of facts giving rise to the claim.

**40** The Court finds in favor of the CR Parties and against the Halicki Parties on the Twelfth Counterclaim for Trademark Infringement on the CR Parties Statute of Limitations defense.

### E. The CR Parties Third Affirmative Defense: Laches

**41** To prove the affirmative defense of laches, a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself. *Danjaq, LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir. 2001)

**42** The Court finds that the CR Parties have proven by a preponderance of the evidence that the Halicki Parties were aware of facts of an alleged breach of the CR License and alleged trademark infringement on or before February 23, 2015.

**43** The Court finds that the Halicki Parties waited until December 31, 2019, to send the CR Parties a Cease-and-Desist Letter which is four years after the discovery of their discovery of the alleged breach of the CR License and trademark infringements.

**44** The Court finds that the Halicki Parties waited five years and nine months, after discovery of alleged facts giving rise to their counterclaims against the CR Parties.

**45** The Court finds that for five years and nine months, the Halicki

Parties did not take any action to stop, or to seek redress for, the alleged breaches of the CR License or trademark infringement.

**46**    The Court finds that the Halicki Parties' delay is bringing this action is not excused and unduly prejudiced the CR Parties who continued in business manufacturing and selling GT500CRs and GT500CR Carbons.

**47**    The Court finds in favor of the CR Parties and against the Halicki Parties on the First Counterclaim for Breach of Contract, on the CR Parties Laches defense because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the First Counterclaim.

**48**    The Court finds in favor of the CR Parties and against the Halicki Parties on the Third Counterclaim for "Reverse Passing Off", on the CR Parties Laches defense because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the Third Counterclaim.

**49**    The Court finds in favor of the CR Parties and against the Halicki Parties on the Twelfth Counterclaim for Trademark Infringement, on the CR Parties Laches defense because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the Twelfth Counterclaim.

**F.    The CR Parties Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence**

**50**    To prove waiver, the CR Parties must show that there was clear, decisive and unequivocal conduct by the Halicki Parties which indicated a purpose to waive the legal rights involved. *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-603 (9th Cir. 1995).

**51**    To prevail on an estoppel defense, the CR Parties must prove (1) that the Halicki Parties knew of the CR Parties' infringing conduct; (2) that the Halicki

Parties either intended that the CR Parties rely on their conduct or acted in a way that gave the CR Parties the right to believe the Halicki Parties intended them to rely; (3) that the CR Parties were ignorant of the true facts; and (4) that the CR Parties relied on the Halicki Parties' conduct to the CR Parties' detriment. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015).

52      To prove acquiescence, the CR Parties must show that the Halicki Parties, by affirmative word or deed, conveyed their consent to the CR Parties with respect to use of their intellectual property. "Estoppel by acquiescence includes two elements of laches… and adds (3) affirmative conduct inducing the belief that [the plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) (*quoting E&J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994)).

53      The Court finds that the CR Parties have proven by a preponderance of the evidence that the Halicki Parties were aware of facts of an alleged breach of the CR License and alleged trademark infringement on or before February 23, 2015.

54      The Court finds that the Halicki Parties freely and knowingly delayed five years and nine months, after discovery of these facts to file their counterclaim against the CR Parties.

55      The Court finds that in the five years and nine months, the Halicki Parties, with knowledge of the CR Parties continued sale of GT500CR and GT500CR Carbons, actively represented by their inaction that they would not take any action to stop, or to seek redress for, the alleged breaches of the CR License or claimed unauthorized use of their trademarks.

56      The Court finds that the delay in taking action is inexcusable and the Halicki Parties have not offered evidence to justify their delay in acting leading the CR Parties to rely on the Halicki Parties acquiescence and approval of the CR Parties

continued manufacture and sale of the GT500CR and GT500CR Carbons.

**57** The Court finds that despite the Halicki Parties discovery of alleged breaches of the CR License or claimed unauthorized use of their trademarks in February 2015, the Halicki Parties waited until December 31, 2019, to send a Cease-and-Desist Letter to the CR parties.

**58** The Court finds that the Halicki Parties have offered no evidence to support an excuse for the delay, which prejudiced the CR Parties since they continued to manufacture and sell GT500CR and GT500CR Carbons openly in the marketplace without knowledge of the Halicki Parties' claims of an alleged breach of the CR License and unauthorized use of trademarks.

**59** The Court finds that the Court finds in favor of the CR Parties and against the Halicki Parties on the First Counterclaim for breach of Contract, on the CR Parties Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the First Counterclaim.

**60** The Court finds in favor of the CR Parties and against the Halicki Parties on the Third Counterclaim for "Reverse Passing Off", on the CR Parties Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the Third Counterclaim.

**61** The Court finds in favor of the CR Parties and against the Halicki Parties on the Twelfth Counterclaim for Trademark Infringement, on the CR Parties Fourth Affirmative Defense: Waiver, Estoppel, and Acquiescence because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the Twelfth Counterclaim.

**G.** **The CR Parties Fifth Affirmative Defense: Unclean Hands**

**62** To prevail on an unclean hands defense, the CR Parties must show

that the Halicki Parties engaged in misconduct that relates to the claims that the Halicki Parties are asserting. *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009). To invoke this doctrine, the CR Parties must prove by clear and convincing evidence that the Halicki Parties engaged in wrongfulness, willfulness, bad faith, or gross negligence. *POM Wonderful, LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (*citing Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982).

**63**     The Court finds that the CR Parties have proven by a preponderance of the evidence that the Halicki Parties were aware of facts of an alleged breach of the CR License and alleged trademark infringement on or before February 23, 2015.

**64**     The Court finds that the CR Parties and the Shelby Parties have proven that despite the Halicki Parties claims, they hold no rights in and to the car character in the Remake that has been referred to as "Eleanor".

**65**     The Court finds that the CR Parties and Shelby Parties have proven that they, along with the Halicki Parties sell products in the same marketplace.

**66**     The Court finds that the preponderance of the evidence is that despite believing that the CR Parties may have breached the CR License and made unauthorized use of the Halicki Parties' trademarks, they freely and knowingly delayed five years and nine months, after discovery of these facts to file their counterclaim against the CR Parties.

**67**     The Court finds that the in those five years and nine months, the Halicki Parties, with knowledge of the CR Parties continued sale of GT500CR and GT500CR Carbons, actively represented by their inaction that they would not take any action to stop, or to seek redress for, the alleged breaches of the CR License or claimed unauthorized use of their trademarks.

**68**     The Court finds that the delay in acting is inexcusable, and the Halicki Parties have not offered evidence to justify their delay in acting leading the

CR Parties to rely on the Halicki Parties acquiescence to their continued manufacture and sale of the GT500CR and GT500CR Carbons.

**69**      The Court finds that despite discovery of alleged breaches of the CR License or claimed unauthorized use of their trademarks in February 2015, the Halicki Parties waited until December 31, 2019, to send a Cease-and-Desist Letter to the CR parties.

**70**      The Court finds that the Halicki Parties have offered no evidence to support an excuse for the delay, which prejudiced the CR Parties since they continued to manufacture and sell GT500CR and GT500CR Carbons openly in the marketplace without knowledge of the Halicki Parties' claims of an alleged breach of the CR License and unauthorized use of trademarks.

**71**      The Court finds that the Court finds that the Halicki Parties actions in delaying prosecution and enforcement of their deemed rights was not in good faith or equitable in light of their dealings with the CR Parties.

**72**      The Court finds that the Court finds in favor of the CR Parties and against the Halicki Parties on the First Counterclaim for breach of contract, on the CR Parties Fifth Affirmative Defense: Unclean Hands, because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the First Counterclaim.

**73**      The Court finds that the Court finds in favor of the CR Parties and against the Halicki Parties on the Third Counterclaim for "Reverse Passing Off", on the CR Parties Fifth Affirmative Defense: Unclean Hands, because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if any, after discovery of the facts giving rise to the Third Counterclaim.

**74**      The Court finds that the Court finds in favor of the CR Parties and against the Halicki Parties on the Twelfth Counterclaim for trademark infringement, on the CR Parties Fifth Affirmative Defense: Unclean Hands, because the Halicki Parties failed to take action to enforce their rights and minimize their damages, if

1   any, after discovery of the facts giving rise to the Twelfth Counterclaim.

2   **IV.   CONCLUSIONS AND RELIEF**

3       **1**      The CR Parties proved at trial that all the Halicki Parties'

4   counterclaims against them fail.

5       **2**      The CR Parties Join in the Shelby Parties conclusions that the Court

6   declare that (a) vehicles, including the GT500, which do not contain the Eleanor

7   Hood, Eleanor Inset Lights, or any Eleanor Marks, do not infringe on any of the

8   Halicki Parties' rights, and that the Halicki Parties have no right to prohibit the CR

9   Parties from using or exploiting any of SHELBY Marks under license from the

10   Shelby Parties for any purpose; and (b) vehicles manufactured by the CR Parties

11   prior to or under the express authorization of the Settlement Agreement, even to the

12   extent that they may contain the Eleanor Hood, Eleanor Inset Lights, or any Eleanor

13   Marks, do not infringe on any of the Halicki Parties' rights, and the Halicki Parties

14   have no right to prohibit or in any way constrain the ownership or sale of such

15   vehicles manufactured prior to or under the express authorization of the Settlement

16   Agreement, even to the extent that they may contain the Eleanor Hood, Eleanor Inset

17   Lights, or any Eleanor trademarks.

18       **3**      Issues relating to exceptional case determination and attorney's fees

19   are reserved for post-judgment briefing.

20   DATED:  March 14, 2023         **MURCHISON & CUMMING LLP**

21

22                       By:  <u>/s/ Anton Handal</u>

23                         Anton N. Handal

24                         Georgiana A. Nikias

25                         Attorneys for Counter-Defendants

26                         Classic Recreations, LLC, Jason Engel and Tony Engel

27

28

## **CERTIFICATE OF SERVICE**

I certify that counsel of record who are deemed to have consented to electronic service are being served on March 14, 2023, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First-Class Mail on this date.

Saneida Slayton