UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> DENICE SHAKARIAN HALICKI et al., <br><br> Defendants. | Case No. 8:20-cv-01344-MCS-DFM <br><br> **ORDER RE: SHELBY PARTIES' CLAIM FOR DECLARATORY RELIEF AND CR PARTIES' FEES** |

Two outstanding issues remain in this long-idling contract and intellectual property case concerning premium vehicles and vintage films. First, a Ninth Circuit panel reversed the Court's dismissal of the claim for declaratory relief by Carroll Shelby Licensing, Inc., and Carroll Hall Shelby Trust (together, "Shelby Parties") against Denice Shakarian Halicki, Eleanor Licensing, LLC, and Gone in 60 Seconds Motorsports, LLC (together, "Halicki Parties"), and remanded the matter "for the narrow purpose of issuing the appropriate declaration." (Op. 21, ECF No. 478; *see also id.* at 19–21.) Second, in response to the motion of Classic Recreations, LLC, Jason Engel, and Tony Engel (together, "CR Parties") to recover attorney's fees from the Halicki Parties, the Court determined that Classic Recreations "is entitled to recover

attorney's fees incurred to defend against Eleanor Licensing's breach of contract claim," but deferred resolving the balance of the motion pending further briefing. (Order Re: Mots. for Att'y's Fees 8, ECF No. 469.) Since then, the Ninth Circuit "remand[ed] the matter of [the CR Parties'] appellate attorney's fees to the district court for determination." (Order 2, ECF No. 489.)

On the Court's invitation, the parties briefed these two issues. (Shelby DJ Br., ECF No. 499; Halicki DJ Br., ECF No. 500; CR Fee Br., ECF No. 507; Halicki Fee Br., ECF No. 508.)[1] The Court deems the issues appropriate for resolution without oral argument. Fed. R. Civ. P. 78(b).

## I.    DECLARATORY RELIEF

### A.    Background

In brief, and as relevant to the claim for declaratory relief,[2] the Shelby Parties and the Halicki Parties (and other entities) were embroiled in litigation in the mid-'00s over cars called GT500E, which were manufactured under a license from Carroll Shelby Licensing and were designed to look like a car called Eleanor from the 2000 film *Gone in 60 Seconds*. (Bench Verdict ¶¶ 24–27, ECF No. 439.) Halicki owns the merchandising rights to the Eleanor car as it appears in the film. (*Id.* ¶ 11.) The litigating parties reached a settlement in 2009. (*Id.* ¶ 28.)

Beginning in 2019, the Halicki Parties demanded that GT500E owners remove Shelby badging from their vehicles and replace it with Eleanor badging; entered licensing agreements with GT500E owners; threatened to sue an auction company if it allowed a Shelby vehicle to be sold without rebadging; and demanded that Classic Recreations and others cease and desist "manufacturing and selling counterfeit

---

[1] The Court strikes uninvited briefs the parties filed. (Shelby Resp. to Halicki DJ Br., ECF No. 504; Halicki Resp. to Shelby Resp. to Halicki DJ Br., ECF No. 505.)

[2] The Court includes this summary only for context. The findings of fact stated in the bench verdict control the disposition here.

Eleanors," apparently referring to cars labeled GT500CR they were producing. (*Id.* ¶¶ 21, 36–38.) This suit followed.

In the final pretrial conference order, which superseded the pleadings, the Shelby Parties sought the following declaratory relief:

> (a) Shelby GT500CR vehicles do not infringe on any of the Halicki Parties' rights, (b) the Shelby GT500E vehicles manufactured prior to the Settlement Agreement do not infringe on any of the Halicki Parties' rights, and (c) the Halicki Parties have no right to prohibit or in any way constrain the ownership or sale of any Shelby vehicles, including Shelby GT500E vehicles.

(FPTCO 9–10, ECF No. 408; *see also id.* at 70.)

In its bench verdict, the Court determined that because the arguments the Shelby Parties presented in support of their declaratory claim were coextensive with their arguments toward their dismissed claims for breach of contract and breach of the implied covenant of good faith and fair dealing, "their arguments in favor of a judicial declaration consistent with a judgment in their favor on those claims fail for similar reasons." (Bench Verdict ¶ 80.) The Court declined to issue a declaration to the extent the Shelby Parties sought a declaration pertaining to the Halicki Parties' intellectual property rights, as "[n]one of the Shelby Parties' claims required an adjudication concerning the extent of the Halicki Parties' intellectual property rights, . . . and the Shelby Parties have presented no argument to support a judicial declaration that the GT500CR and GT500E do not infringe the Halicki Parties' intellectual property rights." (*Id.* ¶ 81.)

A Ninth Circuit panel reversed the Court's judgment on this claim, reasoning that "a declaration will clarify and settle the legal relations at issue between Shelby and Halicki" given the parties' disagreement as to which claims remain unresolved after proceedings here, Halicki's press release after the verdict that "ma[de] it appear that she

3

will likely continue to hassle Shelby going forward," and Halicki's "history of mischaracterizing [the Ninth Circuit's] opinions." (Op. 20.) The panel provided the following guidance on the proper scope of relief:

> Shelby is entitled to a declaration that is consistent with what has been adjudicated in this case. Accordingly, it would seem appropriate to declare that the GT-500CR does not infringe on Halicki's copyright interests in Eleanor or contractual rights under the settlement agreement. In considering the latter, the district court denied relief because Shelby failed to prevail on its own breach of contract claim. But that conflated Shelby's affirmative breach of contract claim (arguing that Halicki breached the settlement agreement) with its declaratory relief claim (seeking a declaration that Shelby did not breach the settlement agreement). Finally, we would also be inclined to grant Shelby's request for declarative relief as to the trademark and trade dress rights for the reasons stated in Shelby's briefing.

(*Id.*) The panel sent the issue back to this Court for full consideration in the first instance. (*Id.* at 21.)

### B. Discussion

The Declaratory Judgment Act authorizes the Court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1189 (9th

4

Cir. 2025) (internal quotation marks omitted). The Court is bound by the mandate to issue a declaration vindicating the Shelby Parties' claim for declaratory relief.

The parties offer competing proposed declarations:

| Shelby Parties' Proposal (ECF No. 499-1) | Halicki Parties' Proposal (ECF No. 500-1) |
|---|---|
| On the Eighth Claim for Declaratory Relief by Carroll Shelby Licensing, Inc., and Carroll Hall Shelby Trust against Denice Shakarian Halicki, Eleanor Licensing, LLC and Gone in 60 Second Motorsports, LLC, this Court declares that the Shelby GT500CR and Shelby GT500CR Carbon or any other substantially similar Shelby branded vehicles that do not contain the hood or inset lights described by Paragraph 4 of the 2009 Settlement Agreement do not infringe on any of Halicki, Eleanor Licensing or Gone in 60 Seconds Motorsports rights, including, without limitation, contract, copyright, trademark, and trade dress rights. | On the claim for declaratory relief by Carroll Shelby Licensing, Inc., and Carroll Hall Shelby Trust, judgment is entered in favor of Carroll Shelby Licensing, Inc., and Carroll Hall Shelby Trust and against Denice Shakarian Halicki and Eleanor Licensing, LLC, that the licensing of the vehicles identified as the GT500CR and GT500CR Carbon by Carroll Shelby Licensing, Inc. and the Caroll Hall Shelby Trust does not infringe on Halicki's and Eleanor Licensing, LLC's copyright and trademark interests in Eleanor or their contractual rights under the [2009 Settlement Agreement]. |

The parties' competing proposals differ in two material respects: (1) the Shelby Parties' proposal covers Shelby-branded vehicles "substantially similar" to the GT500CR and GT500CR Carbon, whereas the Halicki Parties' proposal extends only to GT500CR and GT500CR Carbon vehicles; and (2) the Shelby Parties' proposal extends to any rights the Halicki Parties might assert in the vehicles, whereas the Halicki

Parties' proposal extends only to their copyright, trademark, and contract interests. (*See* Shelby DJ Br. 2.)[3]

The Shelby Parties submit that the Halicki Parties had an opportunity through this litigation "to offer evidence of *any* claims they might have against the GT500CR . . . and failed to do so," so the judgment should "free the GT500CR from future claims." (*Id.* at 4.) The Shelby Parties note concern that the Halicki Parties might reengage in further disputes should GT500CRs be subject to "minor, non-material design change[s]," such as a change in vehicle naming conventions. (*Id.* at 5.)

The Halicki Parties contend that "[t]he **only** Shelby licensed vehicles adjudicated were the GT500CR and GT500E," (Halicki DJ Br. 5 (footnote omitted)), so the declaratory relief awarded here should not extend to "all vehicles that are 'substantially similar' to the GT500CR," (*id.* at 6). The Halicki Parties also assert that they withdrew their trade dress claim early in this case, and the Court did not adjudicate any trade dress claim, so any declaratory relief should not envelop such a claim. (*Id.* at 5, 14.)

The Court issues a declaration granting declaratory relief consistent with what the Shelby Parties sought in the final pretrial conference order, which gives effect to the Halicki Parties' proposal on the first disputed issue and the Shelby Parties' proposal on the second.

As to the first issue, the Shelby Parties did not place the Halicki Parties—or the Court—on notice before trial that it would seek declaratory relief pertaining to any vehicles other than the GT500CR and GT500E. (FPTCO 9–10.) Now, upon remand and a closed evidentiary record, the Shelby Parties attempt to extend declaratory relief to "substantially similar Shelby branded vehicles" lacking certain features, but their proposed relief is too nebulous and conjectural to support an award. The Shelby Parties have not identified any non-GT500CR vehicles that fit this description before, at, or

---

[3] The Halicki Parties' proposal also omits reference to Gone in 60 Seconds Motorsports, but the omission appears to be a scrivener's error.

after trial. Nor have they provided any evidence suggesting that the vehicles that were the subject of this lawsuit imminently might be subject to "minor, non-material design change[s]" such that a declaration protecting the vehicles after such immaterial changes would be prudent. (Shelby DJ Br. 5.) The Shelby Parties suppose that the Halicki Parties might "subject Shelby to seriatim lawsuits" for such changes to GT500CR vehicles, (*id.*), but so too might the Shelby Parties injudiciously invoke the declaration they propose to shield from the Halicki Parties' challenge any number of vehicles that were not at issue in this litigation, such as Shelby-branded vehicles that have not yet been produced that one party or another might deem "substantially similar" to the GT500CR. The Court shares the Shelby Parties' concern about repeating the cycle of litigation, just as this suit followed the mid-'00s litigation, but it declines to issue a declaration extending beyond the reach of the vehicles at issue in this lawsuit. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (admonishing courts not to entertain declaratory judgment actions that would result in "an opinion advising what the law would be upon a hypothetical state of facts" (internal quotation marks omitted)); *see also, e.g.*, *Sawyer v. Riverside County*, No. 5:24-cv-01683-SSS-DTBx, 2025 U.S. Dist. LEXIS 68198, at *15–16 (C.D. Cal. Apr. 9, 2025) (citing *Feldman v. Bomar*, 518 F.3d 637 (9th Cir. 2008), for the proposition that declaratory "relief is not available based on mere speculation that a set of facts might exist," and determining that "any declaratory relief concerning the future rights of the Plaintiff would likely be based on a speculative set of future facts").

With respect to the second issue, in contrast to the first, the Shelby Parties put the Halicki Parties on notice that they sought a declaration that "Shelby GT500CR vehicles do not infringe on *any* of the Halicki Parties' rights." (FPTCO 9 (emphasis added).) That is, the Shelby Parties placed at issue any rights the Halicki Parties might have claimed in GT500CR vehicles, and at trial the Halicki Parties did not raise any issue with respect to their trade dress rights (or any other intellectual property or other rights) in response to this or any other claim. (*See, e.g.*, Halicki Resp. Br. 23, ECF No. 427

("The Halicki Parties are not denying any Shelby trademarks or trade dress, or claiming ownership of either."); *see generally* Halicki Closing Br., ECF Nos. 421 to 421-1 (mentioning trade dress not once).) The Halicki Parties cannot now claim that their strategic decision not to raise trade dress issues at trial should be read to preserve them from the reach of declaratory relief. (Halicki DJ Br. 14.) In any event, given that the Halicki Parties originally pleaded allegations of trade dress infringement they later dropped, (*compare* Second Am. Countercl. ¶ 144, ECF No. 69, *with* Countercl. ¶ 124, ECF No. 37), and the parties' thorough litigation of claims concerning GT500CR vehicles in this case, any trade dress issue they endeavor to preserve likely merges into any judgment here, *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 868 (9th Cir. 1992) ("Res judicata bars both claims actually litigated and those that arise from the same transaction and *could have been* litigated in a prior proceeding." (citing Restatement (Second) of Judgments § 24(1))). The Court concurs with the Ninth Circuit panel that, based on the facts found at trial and prior rulings in this case, the Shelby Parties are entitled to a broad declaration encompassing any rights the Halicki Parties might claim in GT500CR vehicles, including trademark and trade dress interests. (*E.g.*, 1st MSJ Order 12–13, ECF No. 232 (granting summary judgment on the Halicki Parties' trademark claim upon the Halicki Parties' "withdraw[al of] trademark infringement allegations against the Shelby Parties" (internal quotation marks omitted)); Trial Ex. 416 (objecting to interrogatory as "irrelevant as neither the Shelby Parties nor the Eleanor Licensing Parties are asserting any infringement of any trade dress rights").)

### C. Disposition

The Court declares that the Shelby GT500CR and Shelby GT500CR Carbon do not infringe on any rights of Denice Shakarian Halicki, Eleanor Licensing, LLC, or Gone in 60 Seconds Motorsports, LLC, including, without limitation, contract, copyright, trademark, and trade dress rights.

## II.   ATTORNEY'S FEES

### A.   Background

In their counterclaim, the Halicki Parties sued the CR Parties for breach of contract, false designation of origin upon a reverse passing-off theory under the Lanham Act, unfair competition, copyright infringement, violation of California Business and Professions Code section 17200, declaratory relief, violation of the Anticybersquatting Consumer Protection Act, and trademark infringement. (Second Am. Countercl. ¶¶ 89–96, 102–15, 124–45, 151–202.) A license agreement between Eleanor Licensing and Classic Recreations, the contract upon which the Halicki Parties asserted their breach of contract claim, contains the following provision:

> Licensee is responsible for any and all legal fees, collection costs, and/or court costs incurred by Licensor in securing a remedy for any breach of this Agreement by Licensee, including but not limited to, Licensee's failure to render Royalty Statements, Royalty Payments, or any other sums found to be due under this Agreement.

(Handal Decl. Ex. 1 ("Eleanor License") § 16.4(b), ECF No. 445-1.) Although unilateral on its face, this provision is bilateral by operation of California law. Cal. Civ. Code § 1717(a).

After trial, the CR Parties moved to recover attorney's fees incurred in defense of the Halicki Parties' claims. (CR Mot. for Att'y's Fees, ECF No. 445.) The Court denied the motion insofar as the CR Parties sought fees as prevailing parties to a copyright action, granted the motion "insofar as Classic Recreations seeks a determination that it is entitled to recover attorney's fees incurred to defend against Eleanor Licensing's breach of contract claim," and deferred resolution of the balance of the motion pending further alternative dispute resolution and, if unsuccessful, further briefing. (Order Re: Mots. for Att'y's Fees 8.) Concerned that the contract upon which the CR Parties sought to recover fees was one to which only Classic Recreations and

9

Eleanor Licensing were parties, and that "the CR Parties ha[d] not provided the Court with enough information to support a conclusion that *all* their fees need not be apportioned because *all* issues litigated with respect to the other claims are inextricably linked or related to the breach claim," the Court concluded that "[f]urther briefing is necessary to determine the measure of the award, to whom it should issue, and from whom it should issue." (*Id.* at 6–7; *see generally id.* at 4–7.)

The Halicki Parties appealed the judgment, seeking a remand of the contract, copyright, and declaratory relief claims. (Bogorad Decl. Ex. A, at 82, ECF No. 507-2.)[4] After they successfully defended the appeal, the CR Parties applied for an award of fees on appeal in the amount of $522,545. (*Id.* Ex. B, at 6–7, ECF No. 507-3.) Ultimately, the Ninth Circuit panel "remand[ed] the matter of CR's appellate attorneys' fees to the district court for determination." (Order 2.)

The parties' efforts to settle the fee award were unsuccessful. (*See* Mins., ECF Nos. 474, 503.)

### B.   Discussion

Federal Rule of Civil Procedure 54(d)(2) authorizes a party to make a claim for attorney's fees and related nontaxable expenses by motion. Rule 54 "creates a procedure but not a right to recovery attorneys' fees"; the rule requires "an independent source of authority for an award of attorneys' fees." *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1280–81 (9th Cir. 1999). "Under California law, contractual attorneys' fee positions are generally enforceable." *Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119, 1121 (9th Cir. 2004) (citing Cal. Civ. Proc. Code § 1021).

---

[4] The Court denies as unnecessary the Halicki Parties' request for judicial notice of the briefs the parties filed in the Ninth Circuit. (RJN, ECF No. 509.) The Court can consider them without invoking the doctrine of judicial notice.

1. <u>Whether All CR Parties Can Recover Fees from All Halicki Parties</u>

Beyond determining Classic Recreations' entitlement to recovery of fees in defense of the contract claim, the Court previously supposed that the Engels could recover fees under the Eleanor License's fee-shifting provision as "nonsignatory defendant[s] sued on a contract as if [they] were a party to it." (Order Re: Mots. for Att'y's Fees 7 (alterations in original) (quoting *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979)).) The Halicki Parties do not challenge this proposition in their brief. (*See* Halicki Fee Br. 5.) Based on the reasoning in the Court's prior order and the Halicki Parties' decision not to address it, the Court determines all CR Parties can recover fees under the fee-shifting provision.

The Court previously noted that the parties had not briefed whether the CR Parties may recover fees under the Eleanor License from Halicki and Gone in 60 Seconds Motorsports, who are not parties to the contract. (Order Re: Mots. for Att'y's Fees 7.) In their supplemental brief, the CR Parties contend that they may recover fees from Halicki and Gone in 60 Seconds Motorsports because both sued for fees as plaintiffs to the breach of contract claim even though they were nonsignatories to the contract. (CR Fee Br. 16.) They thus stand in the shoes of Eleanor Licensing, another plaintiff to the breach claim who indisputably is subject to the fee-shifting provision of the Eleanor License. (*Id.*)

The Court agrees with the CR Parties. A defendant who can recover under a contractual fee provision "is generally entitled to fees if it prevails against a nonsignatory plaintiff in an action on the contract." *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1111 (1996); *accord Apex LLC v. Korusfood.com*, 222 Cal. App. 4th 1010, 1017–18 (2013) ("A nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party stands in the shoes of a party to the contract. In that situation, the nonsignatory party is liable for attorney fees if it would have been entitled to fees if it prevailed." (internal quotation marks and citations omitted)). Like signatory Eleanor Licensing, nonsignatories Halicki and Gone in 60 Seconds

Motorsports brought an action on a contract and attempted to avail themselves of the contract's fee-shifting provision. Because the CR Parties prevailed on the claim, Halicki and Gone in 60 Seconds subjected themselves to a fee award.

The Halicki Parties assert that fees cannot be awarded against Halicki and Gone in 60 Seconds Motorsports because they could not have been awarded fees had they prevailed at trial, as "they were never parties to the Eleanor License and could not enforce that contract." (Halicki Fee Br. 19; *see id.* at 18–23.) The Halicki Parties cannot have their cake and eat it too.[5] All Halicki Parties brought the breach claim against the CR Parties, and they all pleaded they were entitled to attorney's fees as a remedy. (Second Am. Countercl. ¶ 96.) In other words, under their pleaded theory of the claim, Halicki and Gone in 60 Seconds Motorsports could have recovered fees under the Eleanor License had they prevailed at trial. That their theory was unsound is of no moment. Indeed, the Court ultimately determined that Halicki and Gone in 60 Seconds Motorsports were not parties to the Eleanor License and had not proven any facts to support a theory that they could sue on the contract. (Bench Verdict ¶ 87.) Halicki and Gone in 60 Seconds Motorsports cannot point to the Court's conclusion of law to avoid liability for fees now. What matters is that, even as nonsignatories to the contract, Halicki and Gone in 60 Seconds asserted a theory of breach that would have entitled them to fees under the Eleanor License, and the CR Parties prevailed.

All CR Parties can recover fees from all Halicki Parties.

---

[5] The Halicki Parties' concession raises an inference that Halicki and Gone in 60 Seconds Motorsports violated Rule 11(b) by maintaining the breach claim as nonsignatories without power to enforce the contract. *See* Fed. R. Civ. P. 11(b)(2) (requiring an attorney to certify that claims presented in a pleading "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"). The Court previously admonished the Halicki Parties regarding their Rule 11(b) obligations earlier in the case. (2d MSJ Order 6–7, ECF No. 350.) Given the disposition of this Order and the posture of this case, the Court declines to explore sanctions at this time.

## 2. Whether the CR Parties Can Recover All Fees Incurred in Defense of All Claims and the Appeal

The Halicki Parties argue that the CR Parties are only entitled to recover fees in defense of the breach of contract claim because the fee-shifting provision in the Eleanor License is limited to claims upon the contract. (Halicki Fee Br. 10–12; Opp'n to CR Mot. 9–16, ECF No. 458.) The Halicki Parties submit that several of the claims they asserted against the CR Parties, including the false designation of origin, copyright, trademark infringement, and unfair competition claims, did not require adjudication of any contract issues. (Halicki Fee Br. 10–12.) In contrast, the CR Parties argue that the Halicki Parties' contract claim rested on the CR Parties' alleged misuse of the Halicki Parties' intellectual property rights, so "each [noncontractual] claim supplies its own contractual breach." (CR Fee Br. 11–12.) They ask for an unapportioned award of all fees they incurred in the district court and the court of appeals. (*Id.* at 11–15.)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." *Alperson*, 25 Cal. 3d at 129. Courts do not award fees incurred defending claims outside the scope of a contractual fee-shifting provision. *See, e.g.*, *id.* ("In this case, the two promissory notes contained contract provisions for attorney's fees, but no such provision existed in the general line consignment agreement. Accordingly, attorney's fees incurred solely for defending causes of action based on the latter agreement and defending against the tort causes of action are not recoverable."); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 709 (1998) ("Because section 1717 does not encompass tort claims, it follows that tort claims do not 'enforce' a contract." (citations omitted)).

However, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 126 F.4th 1367, 1380 (9th Cir. 2025) (quoting *Alperson*, 25 Cal. 3d at 129–30). In other

13

words, a court need not apportion fees where it finds that "various claims were inextricably intertwined, making it impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." *Abdallah*, 43 Cal. App. 4th at 1111 (internal quotation marks and citations omitted).

Upon review of the supplemental briefing, the billing records, and the case record as a whole, the Court determines that the non-contract claims the Halicki Parties asserted against the CR Parties are so inextricably intertwined with the contract claim that the CR Parties' fees should not be apportioned.[6] The Halicki Parties pleaded that the CR Parties violated a provision of the Eleanor License that required Classic Recreations to "'refrain from further use of the Licensed Properties or any further reference to it,'" and that "[t]he CR Parties' continued use of the intellectual property rights, trademarks, and copyrightable material relating to 'Gone in 60 Seconds' and 'Eleanor' constitute a breach." (Second Am. Countercl. ¶¶ 94–95 (quoting Eleanor License § 17.1).) The other claims the Halicki Parties concurrently asserted against the CR Parties revolved around the CR Parties' alleged violation of the Halicki Parties' asserted intellectual property rights. (*See, e.g., id.* ¶ 104 ("The counter-defendants' advertising, production and sales of 'Eleanor' and 'Eleanor' parts . . . constitutes 'reverse passing off.'"); *id.* ¶ 114 ("The acts of unfair competition alleged herein were committed with oppression, fraud and malice. Specifically, the counter-defendants are aware that the Halicki Parties are owners of the rights in the copyrighted star car character 'Eleanor' and the 'Gone in 60 Seconds' film franchise."); *id.* ¶ 136 ("[C]ounter-defendants have directly infringed the Halicki Parties' exclusive rights in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501."); *id.* ¶ 144 ("The counter-defendants have engaged in a business practice of ongoing unlawful trademark, and copyright infringement in violation of the Halicki Parties' rights . . . ."); *id.* ¶ 153

---

[6] The Court abrogates its prior order addressing the CR Parties' fee motion to the extent it is inconsistent with this Order.

(seeking a declaration that "'GT500Es', 'GT500CRs,' 'GT500CR Carbons,' and 'Eleanors' infringe on the Halicki Parties' rights"); *id.* ¶ 155 ("The CR Parties are registering, trafficking in, and/or using a domain name confusingly similar to, or dilutive of, the 'Eleanor' trademark."); *id.* ¶ 168 ("[C]ounter-defendants' actions are yet the latest attempt in a decades-long effort to misappropriate and usurp Denice's intellectual property rights.").)[7] The CR Parties' defense of the intellectual property–related claims was interlinked with their defense of the contract claim, as rebutting the allegations and defeating the claims pertaining to the Halicki Parties' intellectual property rights necessarily supported the CR Parties' defense of the breach element of the contract claim. In other words, the CR Parties' efforts to defeat the non-contract claims all bolstered their position that they did not "continue[] use of the intellectual property rights, trademarks, and copyrightable material" of the Halicki Parties in violation of the Eleanor License. (*Id.* ¶ 95.)

The Court previously expressed concern over awarding fees the CR Parties incurred to defend the non-contract claims on matters specific to those claims. (*See* Order Re: Mots. for Att'y's Fees 6–7 (noting that "the CR Parties do not cogently explain" how arguing the reverse passing off counterclaim was incognizable "relates in any way to the contract claim").) Having now reviewed the billing records in more detail, the Court determines that separating noncompensable time entries pertaining to matters specific to the non-contract claims from compensable entries common to both the contract claim and the non-contract claims would be impracticable. Although the entries are detailed enough for the Court to determine the attorneys who represented the CR Parties reasonably expended time toward the defense of their clients, they are not

_____

[7] The Halicki Parties also asserted a claim for a judicial "declaration that the CR Parties . . . violated the [Eleanor] License" and a court-ordered injunction. (Second Am. Countercl. ¶ 165.) The merits of that declaratory claim are obviously enmeshed with the merits of the contract claim, so a more thorough discussion of apportionment is unnecessary.

so detailed that the Court can systematically identify and exclude entries for time spent toward issues that have no bearing on the contract claim. For example, entries memorializing time spent toward briefing the Lanham Act claim do not capture which arguments counsel developed. (*See, e.g.*, Handal Decl. Ex. 2, at 55, ECF No. 445-1 (memorializing 0.2 hours spent drafting "section re: reverse passing off" and 3.2 hours drafting "trademark infringement and false designation of origin sections" in opposition to the Halicki Parties' closing brief).) As another example, although statute of limitations defenses might be individualized based on the limitation period that applies to each claim, the CR Parties argued them, (CR Closing Br. 3–11, ECF No. 423), and counsel drafted them, (Handal Decl. Ex. 2, at 51–52), all together with the contract claim. In short, the non-contract claims all implicate the CR Parties' defense of the contract claim, and delineation of compensable and noncompensable time entries is not practicable, so the Court declines to apportion fees incurred in the district court.[8]

The Court also concludes that the CR Parties may recover all fees incurred in defense of the appeal under the fee-shifting provision. (*See* Eleanor License § 16.4(b) (authorizing award of "any and all legal fees")); *see also Perkins v. Standard Oil Co.*, 474 F.2d 549, 553 (9th Cir. 1973) ("[I]n assessing 'a reasonable attorney's fees' for appellate services, a court must keep in mind that the appeal is not a separate lawsuit,

---

[8] While this consideration plays no role in its substantive reasoning, the Court notes that this result is likely the most economical one for the Halicki Parties. As should be apparent from the delay in resolving this issue, this Court, which sits in one of the busiest districts in the country, does not have the bandwidth to scrutinize the CR Parties' timesheets line by line, compare entries to the work product produced from them, and delineate recoverable and unrecoverable time expenditures. Had the Court endorsed the Halicki Parties' position, it would have considered appointment of a special master at the Halicki Parties' expense to conduct that analysis. *See* Fed. R. Civ. P. 53(a)(1)(B)(ii), (C) (authorizing courts to appoint a special master "to perform an accounting or resolve a difficult computation of damages" or to address "matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district"). Such an appointment likely would have cost the Halicki Parties more than the full award to the CR Parties the Court orders here.

but rather a continuation of a lawsuit . . . .”). The Halicki Parties do not dispute that the CR Parties may recover at least some fees incurred in the appeal, though they argue fees should be apportioned given the parties' and the panel's focus on the copyright issues, which they submit were distinct from the contract issues. (Halicki Fee Br. 12–13.) As with the fees incurred in the district court, apportionment of the fees incurred on appeal is inappropriate. As the CR Parties persuasively note, (CR Fee Br. 15), the panel's decision illustrates why the copyright and contract claims are inextricably intertwined: the panel did not reach the parties' arguments on the contract claim because issues relating to the appeal of that claim were "contingent upon a finding that Eleanor is a copyrightable character." *Halicki*, 138 F.4th at 1186 n.6. That is, a successful defense of the copyright claim was instrumental to the defense of the contract claim.

The CR Parties are entitled to recover all fees incurred in this action.


### 3. Whether the CR Parties' Fees Are Reasonable

The CR Parties seek an award of $1,370,156.95, consisting of $796,021.95 in fees incurred in the district court and $574,135.00 in fees incurred on appeal. (CR Fee Br. 6, 20.)

Courts in the Ninth Circuit employ the familiar "lodestar method" to determine reasonable fees. *Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019); *see Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 77 (1986) (remanding with instructions for trial court to apply lodestar method to claim for fees under Civil Code section 1717). The lodestar method proceeds in two steps. First, courts multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate to arrive at the lodestar figure. Second, courts may adjust the figure upward or downward based on factors not subsumed in the lodestar figure. *Roberts*, 938 F.3d at 1023–24.

Courts calculate the number of compensable hours "by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The movant

17

bears the burden of establishing the number of hours it requests is reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Courts should begin the analysis "with the billing records the prevailing party has submitted." *Id.* "Courts generally accept the reasonableness of hours supported by declarations of counsel." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) (citing *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005)). If the records include hours that are inadequately documented or "excessive, redundant, or otherwise unnecessary," a court may exclude such hours from the sum or, if faced with a "massive fee application," may apply "across-the-board percentage cuts." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted); *accord Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (authorizing deduction of inadequately documented hours).

In determining the reasonable hourly rate, courts consider "[t]he prevailing market rates in the relevant community," which is "the forum in which the district court sits." *Gonzalez*, 729 F.3d at 1205 (internal quotation marks omitted). Courts must consider the experience, skill, and reputation of attorneys and paralegals in determining the appropriate rate. *Id.* at 1205–06; *accord Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (imploring courts to consider the "experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented" (internal quotation marks omitted)). The movant must submit evidence to support the requested hourly rates. *Roberts*, 938 F.3d at 1024; *Gonzalez*, 729 F.3d at 1206. Courts ordinarily look to attorney affidavits and rate determinations in other cases to ascertain the prevailing fees in the community. *Roberts*, 938 F.3d at 1024; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). Judges also may apply their own knowledge of rates in the community. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, counsel for the CR Parties generated contemporaneous billing records and invoiced their clients for their work. (Mankey Decl. ¶¶ 3–5, ECF No. 445-2; Handal

Decl. ¶¶ 4–6, ECF No. 445-1; Bogorad Decl. Ex. B, Bogorad Decl. ¶¶ 2–4, ECF No. 507-3; *see generally* Mankey Decl. Ex. 1, ECF No. 445-2; Handal Decl. Ex. 2; Bogorad Decl. Ex. B, Bogorad Decl. Ex. A, ECF No. 507-3; Bogorad Decl. Ex. D, Bogorad Decl. Ex. A, ECF No. 507-5.) Counsel invoiced the CR Parties for a total of 1,351.01 hours in the trial-level proceedings. (Mankey Decl. ¶ 4; Handal Decl. ¶ 5.) The three attorneys who primarily worked on the case in the trial court charged hourly rates of $795, $595, and $550, which the declarant attorneys submit are either lower than their standard hourly rates or lower than the market rate for attorneys of similar skill and experience in the Los Angeles area. (Mankey Decl. ¶¶ 6–7; Handal Decl. ¶¶ 7, 11; *see also* Mankey Decl. ¶¶ 8–10 (justifying rates for other legal professionals); Handal Decl. ¶¶ 8–10, 12–15 (same).) In the appeal proceedings, counsel invoiced the CR Parties for 579.5 hours of work. (Bogorad Decl. Ex. B, Bogorad Decl. ¶ 4, ECF No. 507-3; Bogorad Decl. Ex. D, Bogorad Decl. ¶ 5, ECF No. 507-5.) The two attorneys who primarily worked on the case charged hourly rates of $1,200 and $650, which lead appellate counsel submits are consistent with or lower than rates charged by attorneys of similar skill and experience in the Los Angeles area. (Bogorad Decl. Ex. B, Bogorad Decl. ¶¶ 5–7, 11 ECF No. 507-3; *see also id.* ¶¶ 8–10, 12 (justifying rates for other legal professionals).)

Given that counsel invoiced the CR Parties consistent with the time entries and rates they asserted, the Court accepts as reasonable counsel's billed hours and rates. Having reviewed counsel's detailed time records, the Court has not identified any excessive, redundant, or unreasonable time entries. Counsel's representations about the skill and experience of all the legal professionals who worked on the case support the rates they charged the CR Parties, and the rates also align with the Court's understanding of the market rates in the district for intellectual property specialists of similar experience and skill. *See Ingram*, 647 F.3d at 928.

The Halicki Parties argue that the CR Parties' counsel overstaffed this case and charged exorbitant rates. (Halicki Fee Br. 14–16; Opp'n to CR Mot. 24–25.) Not so. The Halicki Parties point to their own counsel's lower rates and similar experience

compared to the CR Parties' counsel. (Halicki Fee Br. 15–16.) In the Court's view, the rate differential is consistent with the quality of the respective counsels' advocacy. Although the Halicki Parties complain that counsel's rates in the appeal proceeding were even higher, (Halicki Fee Br. 15), courts commonly recognize that rates for representation on appeal are generally higher than representation in the trial court, *see, e.g.*, *Harvey v. Means*, No. 2:23-cv-1712, 2025 U.S. Dist. LEXIS 164685, at *4 (W.D. Wash. Aug. 25, 2025) (approving higher rate for appellate counsel than was approved for trial counsel). The Halicki Parties note that over a dozen legal professionals defended the CR Parties, (Halicki Fee Br. 14–15), but this is to be expected: the case has endured for nearly six years, during which lead counsel for the CR Parties changed firms. Over three-quarters of the time billed in the district court is attributable to three attorneys, and over four-fifths of the time billed on appeal is attributable to two attorneys. The Halicki Parties do not meaningfully argue the CR Parties overstaffed the case at any given point in the litigation.

The lodestar figure represents a presumptively reasonable attorney's fee. *Gonzalez*, 729 F.3d at 1202. Although a court may adjust the lodestar based on a number of factors, the CR Parties do not advocate an adjustment, and the Court sees no reason to depart from the lodestar because the circumstances suggest the lodestar figure is reasonably aligned with the market. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (reciting factors to analyze in adjusting the lodestar); *id.* at 1138 (teaching that an "adjustment to the lodestar . . . is intended to approximate market-level compensation").

The Court awards the CR Parties the lodestar figure of $1,370,156.95.

          4.     <u>Whether and from When Postjudgment Interest Accrues on the Award</u>

The CR Parties contend they are entitled to postjudgment interest on the award of fees incurred in the district court proceedings from the date of the original judgment,

but they offer no authorities in support of their position. (CR Fee Br. 7, 9.) They do not present a position on whether and from when interest should accrue on the award of fees incurred on appeal.

Since briefing concluded, the Ninth Circuit issued a published decision holding that postjudgment interest on a fee award should accrue from the date a court issues a judgment that has "identified parties and a definite and certain designation of the amount . . . owed." *United States ex rel. Thrower v. Acad. Mortg. Corp.*, __ F.4th __, No. 24-6247, 2026 U.S. App. LEXIS 9815, at *10 (9th Cir. Apr. 6, 2026) (internal quotation marks omitted). Accordingly, postjudgment interest on the entire award will accrue from the date of the amended judgment to be issued with this Order.

### C.   Disposition

The CR Parties are entitled to fees from the Halicki Parties in the amount of $1,370,156.95.

## III.   CONCLUSION

The Court directs the Clerk to enter an amended judgment consistent with this Order.

**IT IS SO ORDERED.**

Dated: April 23, 2026

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

21